**GIFFORD–HILL AND COMPANY, Inc.,
Petitioner,**

**v.**

**The STATE of Texas, Respondent.**

**No. B–990.**

Supreme Court of Texas.

June 4, 1969.

Rehearing Denied July 9, 1969.

Touchstone, Bernays & Johnston, Jim E. Cowles and Charles Beresford, Dallas, Clark, Thomas, Harris, Denius & Winters, J. Sam Winters, Barr McClellan and Mary Joe Carroll, Austin, for petitioner.

Crawford C. Martin, Atty. Gen., Nola White, A. J. Carubbi, Jr., John R. Grace and W. E. Allen, Asst. Attys. Gen., Austin, for respondent.

HAMILTON, Justice.

This is a dispute between the State of Texas and Gifford-Hill & Company, Inc. about the inclusion in taxable receipts of monies collected by Gifford-Hill for reimbursement of charges in transporting Gifford-Hill products to purchasers.

The trial court found that the transportation costs occurred after the sale, and held that Gifford-Hill was not liable to the State of Texas for sales taxes on these charges. The Court of Civil Appeals reversed, and rendered judgment for the State, holding that the cost of transporting the sellers' material to a purchaser was subject to the sales tax. 428 S.W.2d 451. We reverse the judgment of the Court of Civil Appeals, and affirm the judgment of the trial court that the State take nothing in its suit against Gifford-Hill & Co., Inc.

The petitioner, Gifford-Hill & Co., Inc., is engaged in the business of producing and selling aggregate, a product which is a mixture of various proportions of sand and different sizes of gravel. The basic materials, sand and gravel, are stored in bulk at several plants over the state. After receipt of an order, Gifford-Hill mixes the aggregate according to the standards specified by the customer. Gifford-Hill neither owns nor possesses any truck or other vehicle for the transportation of the aggregate. The customer either picks up the aggregate in his own trucks, contracts directly with a common carrier, or authorizes Gifford-Hill to arrange with a common carrier to transport the aggregate to his preferred destination. In the transactions in controversy

here, transportation by a common carrier was arranged and paid for by Gifford-Hill; Gifford-Hill also separately set out and billed this cost to the buyer of the materials. In rendering this service, Gifford-Hill made no profit on these transportation charges.

Over the period in question here, Gifford-Hill collected and paid to the State sales taxes only upon monies received for the quoted price of aggregate at the plant. This suit was brought for taxes on receipts collected by Gifford-Hill for delivery charges by common carriers from September 1, 1961 to June 30, 1964, following the determination by the State Comptroller of a deficiency of $15,232.31 in taxes, penalties, and interest for this period. This action by the State was brought in accordance with the procedure set forth in Art. 20.06 and Art. 20.08, Title 122A, Vernon's Ann.Civ.Stat.

The contract Gifford-Hill makes with its customers for purchase of its aggregate product is made up of several documents. Typically, a customer telephones the petitioner to order aggregate; this order is recorded on a telephone order slip. On large sales, a "quotation and sales contract" document is also used, which quotes the price to be charged for the material. An instrument of "acknowledgement," in effect the final sales contract, is sent to the customer by Gifford-Hill after Gifford-Hill acknowledges and accepts the order.

The question in this case is whether the receipts for reimbursement of transportation charges paid for by Gifford-Hill are taxable under the limited sales and use tax statutes. Posing the inquiry another way, the suit arises because Gifford-Hill has paid some of the common carriers who transport aggregate to Gifford-Hill customers; it would not have arisen had Gifford-Hill's customers directly paid common carriers for their own transportation.

Provisions of the retail sales tax are found in Chapter 20, Title 122A, Taxation-General, Vernon's Ann.Civ.Stat. The Statute in effect during the period here in dispute, and the one which levies the tax, Article 20.02, Vernon's Ann.Civ.Stat., reads as follows:

"There is hereby imposed a limited sales tax at the rate of 2% on the *receipts* from the *sale* at retail of all personal property within the State." [Emphasis added.]

The definitions of the terms used in this article are declared by the Act to have the meaning stated, "unless a different meaning clearly appears from the context." Article 20.01, Vernon's Ann.Civ.Stat. The terms in this levying statute here relevant are specifically defined in the Act itself.

First, "receipts" is defined by Art. 20.01 (D) (1):

" 'Receipts' means the total amount of the *sale* or lease or rental *price,* as the case may be, of the retail sales of retailers, valued in money, whether received in money or otherwise * * *." [Emphasis added.]

Art. 20.01(D) (2) further provides that:

" 'Receipts' does not include any of the following:

"(g) Charges for transportation of tangible personal property after sale."

Since "receipts" is defined as the "total amount of the sale * * * price," the definition of "sales price" in Art. 20.01(L) (1) is pertinent:

" 'Sales Price' means the total amount for which tangible personal property is sold, valued in money, whether paid in money or otherwise * * *."

Art. 20.01(L) (3) further provides, as the definition of "receipts" does, that:

" 'Sales Price' does not include any of the following:

"(g) Charges for transportation of tangible personal property after sale."

As neither "receipts" nor "sales price" include charges for transportation after "sale," the definition of "sale" found in Art. 20.01(K) (1) becomes important in determining the taxable receipts in this case:

"'Sale' means and includes any transfer of title or possession, or segregation in contemplation of transfer of title or possession, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration."

The petitioner among other things contends that the definition of "sale" as a "segregation in contemplation of transfer of title or possession" is here controlling, and that when the aggregate was loaded upon the trucks of the common carrier it was segregated in contemplation of transfer of title and possession to the purchaser. The Court of Civil Appeals has disagreed, holding that "the phrase 'segregation in contemplation of transfer of title or possession' as used in the statute is not applicable to the facts of this case." 428 S.W. 2d 451, 456. It is our view that this definition of sale is applicable to the facts of this case.

■ In imposing the sales tax from which this litigation arises, the Legislature has specifically defined the term "sale". This definition is binding on the courts in an interpretation of this Article. Hurt v. Cooper, 130 Tex. 433, 110 S.W.2d 896, 904–905 (1937). Hence, in the application of this Article a sale must be deemed to have taken place if there has been a "segregation in contemplation of transfer of title or possession." Art. 20.01(K) (1).

The record shows that in the transactions here in dispute there was such a "segregation in contemplation of transfer of title or possession" when the aggregate product was segregated in the amount ordered by an individual purchaser and was loaded upon a common carrier which was economically unrelated to Gifford-Hill. Irrespective of whether or not possession or title passed to the purchaser at that time, the segregation and loading of the material according to specifications agreed upon was· because of an immediate contemplation of the transfer of title and possession. Without this contemplation, no segregation would have been made by Gifford-Hill.

■ In sum, these transportation costs arise only after a specific purchase order with a definite quantity and price has been negotiated and accepted by both parties, in which a customer incidentally agrees to pay for whatever transportation he wants the product to receive. These transportation costs are later separately computed and billed to the purchaser. Gifford-Hill makes no profit from the common carrier transportation, nor are Gifford-Hill employees or equipment used to transport the product. With these particular facts, we must conclude that the here disputed receipts were for transportation costs after sale, i. e., after the "segregation in contemplation of transfer of title or possession", and as such are not taxable "receipts" under the limited sales and use tax provisions.

The State argues in its brief that the transportation for which the charges here in dispute were made took place before the transfer of title or possession from Gifford-Hill. The State also contends that these transportation charges took place before there had been a "purchase" as defined in Art. 20.01(G) (1). But assuming both these contentions to be correct, the petitioner must still prevail in this case. For the tax here in issue is levied on "receipts" from "sale"; the definition of "receipts" does not include the cost of transportation after "sale." A "sale" is deemed to have taken place for purposes of this Act when there is a "segregation in contemplation of transfer of title or possession." Art. 20.01 (K) (1). Having found this event to have taken place, a "sale" as defined in the Act has here occurred. With this determination of "sale", the simultaneous occurrence

of a transfer of title or possession or a "purchase" as defined in the Act becomes immaterial to the resolution of the case.

In accord with our holding above, the judgment of the Court of Civil Appeals is reversed, and that of the trial court is affirmed.