

# THE ATTORNEY GENERAL

## OF TEXAS

CRAWFORD C. MARTIN
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

October 5, 1970

Honorable Ted Butler
Criminal District Attorney
Bexar County, Texas
San Antonio, Texas

Dear Mr. Butler:

Opinion No. M-701

Re: The imposition of ad valorem
tax under Article 7146, V.C.S.
as amended, upon mobile homes
or trailers, which are owned
by nonresident servicemen
and are temporarily situated
within Texas upon property
not owned by the nonresident.

Your request for an opinion poses the following question:

". . . does your Opinion No. WW-742 still
remain effective or with the Amendment to
Article 7146, V.A.T.S., do you have another
opinion?"

Article 7146, Vernon's Civil Statutes, as amended by Acts
1969, 61st Leg., eff. September 1, 1969, reads as follows:

"Real property for the purpose of taxation,
shall be construed to include the land itself,
whether laid out in town lots or otherwise
and all buildings, structures, and improve-
ments, or other fixtures of whatsoever kind
thereon, and all the rights and privileges
belonging or in anywise appertaining thereto,
and all mines, minerals, quarries and fossils
in and under the same, and forms of housing
adaptable to motivation by a power connected
thereto commonly called 'trailers' or 'mobile
homes,' which are or can be used for residential,
business, commercial, or office purposes, except
those located within the boundaries of an asses-
sing unit for less than 60 days or unoccupied
and for sale. The value of any trailer or mobile
home shall not be included in the assessment of
the land on which it is located, unless both the

-3387-

land and the trailer or mobile home are
owned by the same person. If the owner of
the trailer or mobile home is not the owner
of the land, the trailer or mobile home shall
be rendered for taxation separately from the
land and taxes assessed shall be a liability
of the owner of the trailer or mobile home, and
not a liability of the landowner. Land on which
a trailer or mobile home is located shall not
be subject to execution for the collection of
taxes assessed against a trailer or mobile home
unless both are owned by the same person."

Opinion No. WW-742 (1959), dealt with the question of
whether a house trailer owned by a nonresident serviceman
could be considered real property and subject to ad valorem
taxation if it was situated on a plot of land owned by the
nonresident serviceman, who did not intend that the house
trailer should become a permanent part of the land, but merely
his temporary residence during his period of duty in the State
of Texas. In that opinion this office determined by the use
of Texas case law criteria defining real property that the
trailer remained personalty inasmuch as the party annexing
the trailer to the lot did not intend that it become a per-
manent accession to the freehold. Further, the trailer was
determined nontaxable under the Soldiers and Sailors' Relief
Act, 50 USC App 574, which read and still reads, in part, as
follows:

"For the purposes of taxation in respect of the
personal property . . . of any such person (a
serviceman) by any State . . . of which such
person is not a resident or in which he is not
domiciled . . . personal property shall not be
deemed to be located or present in or have a
situs for taxation in such state. . . ."

Article 7146, Vernon's Civil Statutes, before its amend-
ment in 1969 and at the time Opinion No. WW-742 was issued,
provided:

"Real property for the purpose of taxation,
shall be construed to include the land itself,
whether laid out in town lots or otherwise,
and all buildings, structures and improve-
ments, or other fixtures of whatsoever kind

thereon, and all the rights and privileges belonging or in any wise appertaining thereto, and all mines, minerals, quarries and fossils in and under the same."

Thus, mobile homes or trailers were not specifically defined as real property under Article 7146, Vernon's Civil Statutes, until this Article was amended on September 1, 1969. Before this date, as was done in Opinion WW-742, it was necessary to apply the case law rules of fixtures to determine whether property was realty or personalty within the meaning of Article 7146. However, once the amendment became effective on the date heretofore mentioned, mobile homes or trailers became real property for ad valorem tax purposes and were no longer subject to meeting the definition set forth in case authorities. (See Hurt v. Cooper, 110 S.W.2d 896 (Tex.Sup. 1937): "The statute having defined the word, we are not concerned with its usual meaning." Gifford-Hill & Co. v. State of Texas, 442 S.W.2d 320 (Tex.Sup. 1969): "In imposing the sales tax from which this litigation arose the Legislature has specifically defined the term 'sale.' This definition is binding on the courts in an interpretation of this Article.")

In New York Mobile Homes Association v. Steckel, 9 N.Y.2d 533, 215 N.Y.S.2d 487, 175 N.E.2d 151, 86 A.L.R.2d 270 (N.Y. Ct. of App. 1961), the New York Court upheld an ad valorem tax provision defining the terms "lands," "real estate," and "real property" as "forms of housing adaptable to motivation by a power connected thereto, commonly called 'trailers' or 'mobile homes,' which are or can be used for residential, business, commercial or office purposes, except those (1) located within the boundaries of an assessing unit for less than 60 days . . ." The Court determined the trailers or mobile homes were used as residences, that they remained stationary, that their water supply came from tubing attached to an outlet in the ground, that they were connected to the park sewage system and that they were set on blocks so that ". . . there is a rational basis for the legislative classification . . ." of mobile homes or trailers as real property.

It is, therefore, apparent that Article 7146, Vernon's Civil Statutes, as amended, has changed Opinion WW-742, unless this Article as amended conflicts or interferes with 50 USC App. 574, Soldiers and Sailors' Relief Act, in which case the "Supremacy Clause" rule as it appears in Free v. Bland, 82 S.Ct. 1089, 369 U.S. 663 (1962) would apply. The United

States Supreme Court in Free v. Bland, supra, held that a Texas statutory enactment conflicted with a United States Treasury Regulation. In making this determination, the Court pronounced the "Supremacy Clause" rule:

> ". . . The relative importance to the State of its own law is not material when there is a conflict with a valid federal law, for the Framers of our Constitution provided that the federal law must prevail. Article VI, Clause 2. This principle was made clear by Chief Justice Marshall when he stated for the Court that any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield."

In reaching an opinion on whether there is a conflict between state and federal law in this situation, the history of state taxation of nonresident servicemen under the Soldiers and Sailors' Relief Act, supra, must be reviewed. Four important United States Supreme Court decisions under the above mentioned Act are Dameron v. Brodhead, 345 U.S. 322, 73 S.Ct. 721 (1952), California v. Buzard, 382 U.S. 386, 86 S.Ct. 478 (1966), Snapp v. Neal, 382 U.S. 397, 86 S.Ct. 485 (1966), and Sullivan v. United States, 395 U.S. 169, 89 S.Ct. 1648 (1969).

A Colorado personal property ad valorem tax imposed on property of a nonresident Air Force officer was held invalid in Dameron v. Brodhead, supra. In reaching its decision, the court relying on the Soldiers and Sailors' Relief Act stated:

> ". . . For this statute merely states that the taxable domicile of servicemen shall not be changed by military assignment. This we think is within the federal power.

> ". . . There is no suggestion that the state of original residence must have imposed a property tax. . . . Congress appears to have chosen the broader technique of the statute carefully; freeing servicemen from both income and property taxes imposed by any state by virtue of their presence there as a result of military orders. It saved the sole right of taxation to the state of original residence whether or not that state exercised the right. . . .

> ". . . We reject the argument that the word 'deemed' as used implies a rebuttable presumption as to permit taxation in the state of temporary presence in some cases."

The court in California v. Buzard, supra, struck down a California "license fee" imposed upon a nonresident serviceman, who attempted to register his motor vehicle in that state. The court held that California could collect the tax under the Soldiers and Sailors' Relief Act only if it was a "license, fee, or excise" on the motor vehicle and, that since the purpose of the California Act was for general revenue, it did not meet the test of being a "license, fee, or excise." The Court stated:

> ". . . The very purpose of #574 in broadly freeing the nonresident serviceman from the obligation to pay property and income taxes was to relieve him of the burden of supporting the governments of the States where he was present solely in compliance with military orders. . . ."

The authority of a state to levy personal property ad valorem taxes on a nonresident serviceman's house trailer under the Soldiers and Sailors' Relief Act was determined in Snapp v. Neal, supra. The serviceman had not registered or licensed his trailer or paid any taxes on it in his home state. The Court held therein:

> "This a companion case to California v. Buzard. . . . We reverse on the authority of our holding today in Buzard that the failure to pay the motor vehicle 'license, fee, or excise' of the home State entitles the host State only to exact motor vehicle taxes qualifying as 'licenses, fees, or excises,' the ad valorem tax, as the Mississippi Supreme Court acknowledged, is not such an exaction. . . ."

A Sales and Use Tax on a nonresident serviceman was upheld in Sullivan v. United States, supra, as not being within the coverage of the Act. The following quotation reflects:

> ". . . ."

> "Section 574 does not relieve servicemen
> stationed away from home from all taxes of
> the host State. It was enacted with the
> much narrower design 'to prevent multiple
> State taxation of the property.' And the
> substantial risk of double taxation under
> multi-state ad valorem property taxes does
> not exist with respect to sales and use
> taxes. . . ." (Emphasis added.)

Thus, it is apparent that State ad valorem taxes on personal property of nonresident military personnel will not be upheld inasmuch as they violate the Soldiers and Sailors' Relief Act, supra.

The case of United States v. Chester County Board of Assessment and Revision of Taxes, West Chester, Pennsylvania, 281 F. Supp. 1001 (E.D. Penn. 1968), dealt with the levying of real property taxes on house trailers belonging to nonresident servicemen. The Pennsylvania Act defined "Real Estate" as ". . . house trailers and mobile homes permanently attached to land or connected with water, gas, electric or sewage facilities, . . . ."

In reviewing this provision, the Court determined:

> ". . . .

> "The salutory purpose of the federal act
> [Soldiers and Sailors' Relief Act] is to
> relieve nonresident servicemen of the bur-
> den of supporting state and local govern-
> ments, whenever their presence results
> solely from compliance with military orders.

> ". . . .

> "In effect, by appropriate exercise of its
> taxing powers, Pennsylvania has given an
> artificial, statutory real property desig-
> nation to a specific class of house trailers
> which, otherwise, still retain the basic
> characteristic of tangible personal prop-
> erty, namely, mobility.

> "We conclude that this statute, intended to
> raise revenue for the operation of local
> governments within the state, as sought to
> be applied to the personal property of non-

resident servicemen in active service under military orders, <u>is in irreconcil-able conflict with the clearly defined Congressional purpose of #574 in broadly freeing the nonresident servicemen from the obligation to pay property and income taxes.</u> . . .

" . . . .

<u>"Accordingly, we determine that the house trailers involved in this case are within the class of tangible personal property which was specifically exempted from local taxation by Congress under 50 USCA App #574."</u> (Emphasis added.)

Thus, under federal case law authority, a state cannot through statutory enactment change the nature of property and tax that property when it was prohibited by federal law from taxing the property in its original nature. To state the rule more simply, a State cannot tax indirectly what it is prohibited by federal law from taxing directly. To apply a real property ad valorem tax to the property in question would result in a pyramiding of taxes, because the State of the servicemen's domicile would still have the right to levy an ad valorem tax on the same property. As stated in the cases hereinabove cited, the purpose of the <u>Soldiers and Sailors' Relief Act</u> is to remedy this situation.

On the basis of this reasoning, it is concluded that the "Supremacy Clause" of the United States Constitution prohibits the application of Article 7146 to the factual situation in question inasmuch as this Article interferes with 50 U.S.C. App. 574, Soldiers and Sailors' Relief Act, and must yield to the provisions of that Act. We are of the opinion that mobile homes or trailers of nonresident servicemen are not subject to ad valorem taxation.

## S U M M A R Y

Article 7146, V.C.S., defining mobile homes or trailers as real property for ad valorem tax purposes must yield to the provisions of 50 U.S.C. App. 574, <u>Soldiers</u>

Honorable Ted Butler, Page 8,(M- 701)

and Sailors' Relief Act, by virtue of
the "Supremacy Clause" of the United
States Constitution, Article VI, Clause
2. Thus, mobile homes or trailers owned
by nonresident servicemen are not sub-
ject to ad valorem taxation.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Harriet D. Burke
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman
S. J. Aronson
R. D. Green
Jack Sparks
John Reese

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant