**Bob BULLOCK, Comptroller of Public Accounts, Appellant,**

v.

**DUNIGAN TOOL & SUPPLY CO., INC., Appellee.**

No. 8303.

Court of Civil Appeals of Texas.

Sept. 6, 1979.

Rehearing Denied Oct. 4, 1979.

Myra A. McDaniel, Asst. Atty. Gen., Austin, for appellant.

Frank R. Douglass, Austin, for appellee.

DIES, Chief Justice.

Appellee, Dunigan Tool & Supply Co., Inc., plaintiff below, brought suit to recover local sales taxes paid under *Tex.Rev.Civ. Stat.Ann. art. 1066c Sec. 6 B(1)* (Vernon, Supp.1978).[1] Dunigan had paid the assessment and penalty under protest, filed a claim for refund which was denied, and timely instituted a refund suit under *Tex. Rev.Civ.Stat.Ann., Chapter 20, Title 122A, art. 20.10* (Vernon 1969). A non-jury trial was held; judgment was rendered that Dunigan recover $278,504.02; and the trial judge filed Findings of Fact and Conclusions of Law.

Dunigan Tool & Supply Co. sells various supplies and equipment associated with oil and gas production. Dunigan deals primarily in goods that may be classified as tubular or non-tubular. Dunigan has five retail stores located in Texas that carry the non-tubular goods. However, the bulk of tubular goods in which Dunigan deals is stored at pipe facilities until purchased by a particular customer. Four of the pipe facilities are located in cities that have adopted the local sales tax, five pipe facilities are located outside Texas cities, and some pipe facilities are located outside of Texas.

Dunigan also has sales offices in Dallas, Houston, Abilene, and Midland, but the salesmen who work out of these offices spend 90 percent of their time outside the office calling on Dunigan's customers. Dunigan has no staff working at the pipe facilities, but it does have access to these

---

1. "For the purposes of the local sales tax imposed by this Act, all retail sales . . . except sales of natural gas or electricity, are consummated at the place of business of the retailer . . . . If the retailer has more than one place of business in the State, the place or places at which retail sales, leases, and rentals are consummated shall be the retailer's place or places where the purchaser or lessee takes possession and removes from the retailer's premises the articles of tangible personal property, or if the retailer delivers the tangible personal property to a point designated by the purchaser or lessee, then the sales, leases, or rentals are consummated at the *retailer's place or places* of business from which tangible personal property is delivered to the purchaser or lessee." *Tex.Rev.Civ.Stat.Ann. art. 1066c Sec. 6 B(1)* (Vernon Supp.1978).

facilities twenty-four hours a day, and Dunigan's salesmen go there regularly to check inventory or to show the goods to their customers. Dunigan's goods are segregated within these storage facilities.

The usual sale of tubular goods has the salesman receiving an order from the customer, checking to see whether they have the product available, writing up a purchase order, and releasing the pipe to the customer from the facility where it is stored. Dunigan does not transport the pipe; the customer chooses the transporter.

Dunigan's sales may be by another route—the sale may be direct from a mill located in Texas or outside of Texas to the customer. In this direct sale the product is shipped directly to the customer without passing through an intermediate step. Dunigan also sells drilling mud and bits with the actual selection of quantity and quality being done at the well site.

There is no question concerning state sales tax as to any of Dunigan's sales; however, the comptroller is asserting that Dunigan owes a local sales tax on tubular goods sold from the storage facilities, on direct sales from the mills, and on the sale of drilling mud and bits. Bullock has filed a motion urging that this court affirm that part of the trial court's judgment relating to purchases made outside Texas and delivered outside any local taxing jurisdiction pursuant to the decision in *Bullock v. Lone Star Gas,* 567 S.W.2d 493 (Tex.1978).

In assessing the amount Dunigan owed, the comptroller assigned any sale made in Texas to some city and used Dunigan's allocation of sales for commission purposes to determine which city each sale should be assigned.

THE COURT: "Now then is it your position that the Comptroller can assign that sale to any city where the taxpayer has a place of business?

A: "It would be to any—It would be to the city that that sale was registered in the books and records of account of that total business in the case of delivery from a warehouse.

THE COURT: "Now say that again. It would be where?

A: "The sale would be allocated or would be set up based on the location whose records recorded that sale when the sale was made or the delivery was made from a—just a warehouse or storage facility. Where the asset was realized, I think, is one of the terms that we use."

Thus, the comptroller is urging that the local tax should be based on the point where the segregation in inventory, the paper separation, takes place and not on the point where physical segregation occurs.

As to the sales involving tubular goods stored at pipe facilities, the comptroller is contending that these storage facilities *are not* Dunigan's places of business and that the sale must be assigned to one of Dunigan's places of business (the comptroller assigned them as discussed earlier by the commission records). Dunigan, on the other hand, successfully contended below that these storage facilities were the "place or places where the purchaser or lessee takes possession." [2]

The trial judge found for Dunigan, and the Comptroller perfected this appeal urging that the trial judge erred in his interpretation of the terms "place of business of the retailer" and "retailer's place or places," as used in the Local Sales & Use Tax found in *Tex.Rev.Civ.Stat.Ann. art. 1066c Sec. 6 B(1)* (Vernon Supp.1978). Specifically, in his first point of error, appellant complains of Conclusions of Law Nos. 4 and 5 holding

**2.** This view is bolstered by *Tex.Rev.Civ.Stat. Ann., Chapter 20, Title 122A, art. 20.01(K)* (Vernon 1969), which defines sale as "any transfer of title or possession, or segregation in contemplation of transfer of title or possession, exchange, barter, lease or rental, conditional or otherwise, in any manner or by any means whatsoever, of tangible personal property for a consideration."

that pipe storage facilities are Dunigan's place of business.[3]

The dispute centers around the interpretation of *Article 1066c Sec. 6 B(1)* (see note 1 supra) as it relates to *Article 20.01* et seq., Chapter 20, Title 122A, Limited Sales, Excise and Use Tax Act; *Sec. 6 A* of the Local Acts states:

"All applicable provisions contained in Chapter 20 of Title 122A shall apply to the collection of the tax imposed by this Act, except as modified in this Act."

■ Comptroller's argument that the rules and regulations of the Comptroller should determine Dunigan's "place of business" for purposes of the local sales tax is based upon an erroneous reading of *Article 1066c Sec. 6 B(1)* which clearly states that such rules and regulations control *where* the retailer has no permanent place of business in the state. In the instant case Dunigan has several places of business in the state; therefore, the controlling portion of the statute is as follows:

"If the retailer has more than one place of business . . . the place or places at which retail sales, leases, and rentals are consummated shall be the retailer's place or places where the purchaser or lessee *takes possession and removes from the retailer's premises* the articles of tangible personal property . . . ." (Emphasis supplied.)

While it is clear from a reading of *Sec. 6 B(1)* that the above section controls all of Dunigan's sales, it is not clear what "retailer's place or places" involves.

Senate Bill # 482 amending *Article 1066c* and signed by the Governor on June 14, 1979, will not be considered for purposes of this case as it is effective only after the date of passage.

■ In Finding of Fact No. 8, the trial judge found the storage facilities where the purchaser took physical possession to be places of business of the retailer, and appellant did not complain of this finding. See *Lovejoy v. Lillie,* 569 S.W.2d 501, 504 (Tex. Civ.App.—Tyler 1978, writ ref'd n. r. e.), holding that an appellant is bound by material fact findings unless he challenges them.[4]

■ While, as noted by the trial judge in Conclusion of Law No. 5, neither the state or the local act defines place of business, Texas case law and the facts in the instant case are consistent with Finding of Fact No. 8 that the storage facilities were Dunigan's places of business for purposes of the local sales tax. The goods were separated there; Dunigan's employees had access to them at any time; the goods were shown to the customers there; and, most importantly, the customers took physical possession of the goods at that place.

In both *Bullock v. Lone Star Gas Co.,* 567 S.W.2d 493 (Tex.1978) and *Day and Zimmerman, Inc. v. Calvert,* 519 S.W.2d 106 (Tex.1975), the assessment of the 4 percent state tax and the 1 percent local tax were considered to have occurred at the same sales step for taxation purposes. In *Day* the sale took place at the facility where the material was segregated and loaded upon the truck. See also *Gifford-Hill and Company v. State,* 442 S.W.2d 320, 323 (Tex. 1969).

---

**3.** Conclusion of Law No. 4: "With respect to sales . . . from Plaintiff's inventory located at its pipe facilities, under the facts of this case the purchaser takes possession . . . at Plaintiff's pipe facility and, for purposes of the Local Act, that is where the sales are consummated. It is not necessary to determine under these facts whether Plaintiff's pipe facilities are "places of business." To the extent Plaintiff's pipe facilities were located outside of a city limits or inside of a city limits which has not adopted the Local Act, Plaintiff owes no local sales tax. . . ."

Conclusion of Law No. 5: "A 'place of business' is not defined by either the State Act or the Local Act. The Comptroller's determination of a place of business . . . is not controlling here where a plain reading of the statute clearly sets forth the place where a sale is consummated with respect to Plaintiff's inventory sales . . . ."

**4.** Appellant did complain about Conclusion of Law No. 4 which stated that a determination of whether pipe facilities are places of business was unnecessary under the facts of this case.

As both *20.01(K)* and *1066c* place the exact point of sale where physical separation or segregation took place, there is no need to consider the comptroller's recent definition. Accordingly we affirm the conclusion of the trial judge and overrule appellant's first point of error.

█ In his second point, appellant complained of the trial judge's Conclusions of Law Nos. 6, 7, and 8 arguing that the definition of time of sale found in the State Sales Tax Act determines place of allocation of the local sales tax, under the trial judge's conclusions, and that it should not.

As these sales are not made by a company that has no place of business in Texas, the first part of *1066c Sec. 6 B(1)* allowing the comptroller to determine where the sale should be assessed does not come into play. However, since *1066c Sec. 6 B(1)* does not specify where direct sales from mills take place, the State Act should be examined. See *1066c Sec. 6 A* quoted above. *Article 20.01(K)* quoted in full (in note 3) defines sale as taking place where there has been "a transfer of title or possession or segregation in contemplation" of such a transfer.

Under this definition sales where the product goes directly from the mill to the customer should be taxed at the point where the goods are segregated and the customer takes possession of them. See *Gifford-Hill & Co., Inc. v. State,* 442 S.W.2d 320 (Tex.1969); *Bullock v. Lone Star Gas Co.,* 567 S.W.2d 492 (Tex.1978).

As segregation of drilling mud and bits takes place at the well site itself, there would not be a local tax assessment unless the well site was within a city that had adopted the local tax provision.

Finding Conclusions of Law Nos. 6, 7, and 8 to be correct in assessing where the sale takes place for local tax purposes, we overrule appellant's second point of error.

The judgment of the trial court is affirmed.

AFFIRMED.