ALAMO HARDWOODS, INC., Appellant,

v.

Bob BULLOCK, Comptroller of Public Accounts, Appellee.

No. 8810.

Court of Civil Appeals of Texas, Texarkana.

March 24, 1981.

Rehearing Denied April 22, 1981.

Jack F. Ridgeway, San Antonio, for appellant.

Mark White, Atty. Gen. of Texas, Myra A. McDaniel, Asst. Atty. Gen., Austin, for appellee.

BLEIL, Justice.

Alamo Hardwoods, Inc. sued Bob Bullock, Comptroller of Public Accounts, to recover sales tax, penalty and interest, paid under protest. A take nothing judgment was entered after a trial to the court.

The broad issue on appeal is whether charges for lumber millwork operations performed by Alamo Hardwoods are taxable under the "Limited Sales, Excise and Use Tax Act." Tex.Tax.–Gen.Ann. art. 20.01 (1969).

Alamo Hardwoods, appellant, is in the business of selling lumber and performing custom millwork on lumber to specifications of its customers. The Comptroller of Public Accounts, appellee, caused an audit to be performed concerning the millwork operations of appellant and assessed additional state and local sales tax for the period beginning October 1, 1971, and ending September 30, 1975. The Comptroller concluded that $6,148.82 tax should have been collected on milling charges performed by Alamo Hardwoods.

Appellant purchased lumber in unfinished and finished form. Some of the lumber was sold without making any changes to it while other was sold with only slight changes made, such as cutting it to a given length or width. Sometimes charges were made for this service, but on occasion Alamo Hardwoods did not charge for courtesy services such as cutting off the ends of boards. On other lumber orders more extensive milling operations were performed. These procedures included the making of grooves or dadoes to decorate wood surfaces, the cutting of rabbets for joints, the cutting of shiplaps, tongue and grooves, the making of V-shaped joints and the alteration of wood by the making of curves or decorative cuts and designs. Appellant's millwork capabilities range from the making of custom molding and paneling to planing and resawing to desired sizes, to ripping wood for glue joints, and to the lamination of countertops and other lumber in sizes desired by customers. The customers were billed a mill charge for the operations. In some instances mill operations were performed on material supplied by customers. They, too, were billed a mill charge.

Witnesses for both sides of this controversy testified concerning the types of equipment used in performing milling operations performed by Alamo Hardwoods. Testimony also covered the uses of the lumber products after the millwork. These uses included decorative and functional molding, drawer sides, flooring, siding, roof decking, ceiling molding, sheet mold, base mold and decorative work in cabinets, picture frames, or on the surface of large pieces of lumber.

Appellant collected sales tax from their customers on the sales price of the lumber, but did not collect sales tax on charges for the milling operations performed. The Comptroller assessed sales tax on these charges for milling operations. It is the

taxability of these items which is in issue in this cause.

Upon request of the appellant, the trial court made the following fact findings:

"I.

That State and Local Sales tax, penalty and interest were assessed against Plaintiff by the Comptroller of Public Accounts as the result of Audit No. 47761.

II.

That Plaintiff exhausted its administrative remedies, paid Seven Thousand Two Hundred Seventy-Three and 41/100 Dollars ($7,273.41), filed a claim for refund and, after denial of such claim, timely filed this action to recover the taxes.

III.

That State and Local Sales tax, penalty and interest assessed on millwork charges was Six Thousand One Hundred Forty-Eight and 82/100 Dollars ($6,148.82) which is the amount in issue in this cause, of which amount Four Thousand Nine Hundred Nineteen and 15/100 Dollars ($4,919.15) is State Sales tax, penalty and interest, and One Thousand Two Hundred Twenty-Nine and 67/100 Dollars ($1,229.67) is Local Sales tax, penalty and interest.

IV.

That during the audit period Plaintiff performed custom millwork operations on lumber sold by Plaintiff and on lumber supplied by Plaintiff's customers.

V.

That during the audit period the millwork operations in issue were performed to customer specification.

VI.

That the millwork operations in issue are first and/or subsequent production operations in the creation of an item of tangible personal property for ultimate consumption.

VII.

That the millwork operations in issue are processing and/or fabricating type operations as defined by Article 20.-01(K)(2)(a) and Article 20.01(K)(2)(e).

VIII.

That first acts of production and subsequent operations in the manufacture, creation or production of items of tangible personal property for ultimate consumption are taxable labor and services as defined by Article 20.01(D)(1)(b), Article 20.01(L)(1)(b) and Article 20.01(L)(2)(a)."

The court concluded that charges for millwork operations by Alamo Hardwoods ought to be included in the total sales price on which state and local sales tax is due, that the Comptroller of Public Accounts had authority to implement limited sales, excise and use tax regulations No. 95–0.49 and No. 95–0.16 and that Alamo Hardwoods is not entitled to recover the taxes, penalty and interest previously paid to the State of Texas.

The appellant assigns seventeen points of error on which it bases its two-fold argument on appeal. Initially, appellant contends that the mill operations performed by Alamo Hardwoods fit into the remodeling exclusion and are non-taxable. Appellant also says that the court erred in determining that the operations in question were taxable as production or processing operations.

■ In matters involving a particular statute, that statute itself must be examined. The "Limited Sales, Excise and Use Tax Act", Tex.Tax.–Gen.Ann. art. 20.02 (1971), simply imposes a limited sales tax on the receipts from the sale at retail of all taxable items within this State. In Article 20.01, certain definitions appear which are

relevant to the case.[1] The contentions of both parties to this appeal are grounded on these statutory provisions and definitions.

Alamo Hardwoods argues that the definitions and their exclusions as found in the Act are to be given effect. *Gifford-Hill and Company v. State*, 442 S.W.2d 320 (Tex. 1969). It properly argues that Article 20.02 must be read in light of the definitions, and that in the definitions of "Receipts" and "Sales Price" appears an identical exclusion of, "The amount charged for labor or services rendered in installing, applying, remodeling, or repairing the tangible personal property sold."

Appellants claim that the facts in this case are almost identical with those in *Calvert v. Julian Gold, Inc.*, 479 S.W.2d 328 (Tex.Civ.App.—Austin 1972, writ ref'd n. r. e.). We disagree. In that case the court looked at the exclusions to the definitions of "Receipts" and "Sales Price" and noted that the amount charged for labor or services in remodeling was excluded. The court noted

that remodel is defined as meaning "... to model anew; to reform, reshape, reconstruct, to make over in a somewhat different way, to model, shape, form, fashion, ... to recast." 76 C.J.S. Remodel p. 906. Then the court looked to the primary business and specific operations involed in that case. Julian Gold, Inc. was in the retail business of selling women's ready-to-wear clothing. As a part of that retail business, some customers requested that alterations be made on the clothing which they purchased. When that occurred, a separate sales ticket would be made for the alterations. Julian Gold, Inc. collected tax from its customers for the purchase of garments but not for the alterations that they made. Under the facts of record in *Calvert v. Julian Gold, Inc.*, supra, the court held that the alterations made by appellant constituted a "remodeling" under the Act and that the charges for such alterations were not taxable. Alamo Hardwoods asserts that all it does is "alter" certain pieces of wood; that, starting with a piece of lumber, they alter it in size but

1. "Art. 20.01.

.    .    .    .    .

(D) Receipts.
(1) 'Receipts' means the total amount of the sale or lease or rental price, as the case may be, *of the retail sales of taxable items by retailers*, valued in money, whether received in money or otherwise, without any deduction on account of any of the following:

.    .    .    .    .

(b) The cost of the materials used, labor or service costs, interest paid, losses or any other expenses.

.    .    .    .    .

(2) 'Receipts' does not include any of the following:

.    .    .    .    .

(g) The amount charged for labor or services rendered in installing, applying, remodeling, or repairing the tangible personal property sold.

(K) Sale.    .    .    .    .

(2) 'Sale' includes:
(a) The producing, fabrication, processing, printing or imprinting of tangible personal *property for a consideration for consumers* who furnish, either directly or indirectly, the materials used in the producing, fabricating, processing, printing, or imprinting.

.    .    .    .    .

(e) A transfer for a consideration of the title or possession of tangible personal property

which has been produced, fabricated or printed to the special order of the customer.
(L) Sales Price.
(1) 'Sales Price' means the total amount for which taxable items are sold, valued in money, *whether paid in money or otherwise*, without any deduction on account of any of the following:

.    .    .    .    .

(b) The cost of material used, labor or service costs, interest paid, losses, or any other expenses.

.    .    .    .    .

(2) The total amount for which a taxable item is sold includes all of the following:
(a) Any services which are a part of the sale.

.    .    .    .    .

(3) 'Sales Price' does not include any of the following:

.    .    .    .    .

(g) The amount charged for labor or services rendered in installing, applying, remodeling, or repairing the tangible personal property sold.

.    .    .    .    .

(U) Manufacturing. 'Manufacturing' shall *mean and include every operation commencing with the first production stage of any article of tangible personal property and ending with the completion of tangible personal property having the physical properties (including packaging, if any) which it has when transferred by the manufacturer to another.*"

after their millwork it is still the same species of lumber.

We do not agree that all of the millwork operations performed on the lumber are analogous to the alterations performed in *Julian Gold*. To constitute remodeling, operations must be performed on an existing article that retains its identity after the mill operations. *Leakas Furriers v. Bowers*, 98 Ohio App. 337, 129 N.E.2d 478, 484 (1954). In *Julian Gold* the ready-made garments retained their identity as garments throughout the alteration process. They were simply altered in size from a production standard, to meet the specific requirements of the purchaser. This is the type of function which falls under the remodeling exclusion.

Most of the millwork operations listed extend far beyond the ambit of remodeling as found in *Julian Gold*. Making ceiling molding, cutting rabbets for joints, cutting tongue and grooves and cutting decorative surfaces all change the nature of the article itself. It serves a different purpose than before the work was performed. For the operation on the lumber to come within the remodeling exception, the millwork done must have accomplished the purpose of merely changing lumber from the standard size produced for sale, to the specific size required by the customer—that is—sawing a board in two.

The contention of Alamo Hardwoods that the articles remain "wood" is without merit. Even appellant recognizes that wood which is transformed into a countertop remains that substance known as wood, but nevertheless takes on a different identity and the service charge for that procedure is properly taxed. Alamo Hardwoods further argues that it is not in the processing, production or manufacturing business that creates items of tangible personal property for ultimate consumer use and that charges for its millwork should not be subject to the state and local sales tax. The term "Sale" is defined in the Act to include producing, fabrication, processing, printing or imprinting of personal property for consideration for customers who furnish those materials either directly or indirectly. It also includes a transfer for consideration of the title or possession of personal property that has been produced, fabricated or printed to the special order of the customer. Appellant says that the evidence in this case simply does not support a finding that the millwork operations in issue are processing or fabrication operations. Webster's New International Dictionary, 2nd Edition, definition of processing is cited, as are processing definitions by courts in other jurisdictions.[2] The essence of these definitions is that processing contemplates a change in the form of the article by some treatment to result in raw material being changed to marketable tangible personal property.

■ Alamo's argument that it is not a producer, fabricator or processor is similar to its argument that it is engaged in remodeling. In supporting its position, appellant argues that: (1) before and after it performs its millwork operations, the basic material involved is wood; and (2) some of the operations it performs do not result in a complete article. The rationale employed in this first argument would deny the creation of any new article except in a case where the basic material underwent some chemical change so that it was no longer recognizable. While a piece of molding, picture frame or table top still contains the same species of lumber after the millwork by Alamo Hardwoods, it does not necessarily follow that such millwork does not involve production, fabrication or processing, as defined in the Act. In each of the milling operations in evidence, the millwork subjected the lumber to treatment which changed its form, context or condition. These changes were required to make the lumber marketable and were changes made at the request of a customer. The facts as found by the trial court find sufficient support in the evidence and these findings of

---

2. *Huron Fish Co. v. Glander*, 146 Ohio St. 631, 67 N.E.2d 546 (Ohio 1946); *Colbert Mill & Feed Co. v. Oklahoma Tax Commission*, 188 Okl. 366, 109 P.2d 504 (1941); *Linwood Stone Products Co. v. State Dept. of Revenue*, 175 N.W.2d 393, 394 (Iowa 1970).

fact will not be disturbed on appeal. *Harris County Flood Control District v. Shell,* 591 S.W.2d 798 (Tex.1979); *Commercial Union Assurance Company v. Foster,* 379 S.W.2d 320 (Tex.1964).

In nine points of error appellant complains of the trial court's refusal to amend its findings of fact and conclusions of law and of its failure to make additional findings and conclusions. Appellant makes no argument in support of these points of error. Indeed, the additional findings and conclusions which appellant requested are simply those which are in conflict with the original findings and conclusions made and filed by the trial judge. In other words, the appellant simply requested the trial judge to make findings and conclusions opposite to those originally made which would support the appellant's position in each respect. Under these circumstances, no additional or amended findings and conclusions are required to be prepared and filed by a trial court. *State v. Wiergate Lumber Co., Inc.,* 582 S.W.2d 258 (Tex.Civ.App.—Beaumont 1979, writ ref'd n. r. e.); *Garcia v. Ramos,* 546 S.W.2d 400 (Tex.Civ.App.—Corpus Christi 1977, no writ).

The trial court concluded that the operations performed by Alamo Hardwoods, Inc. constituted production steps in the creation, production or preparation of items of tangible personal property for ultimate consumption. The inclusion of the operations such as those performed by Alamo Hardwoods, Inc., as taxable processing is in harmony with the intent of the Act. All of the points of error raised by appellant are overruled.

The judgment is affirmed.