TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00272-CV







Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas;

and John Cornyn, Attorney General of the State of Texas, Appellants


v.



Haber Fabrics Corp., Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 96-11802, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING






 This is a sales tax case. The legislature has exempted certain industries, including
manufacturing, from paying some sales taxes. (1) Appellee Haber Fabrics Corporation ("Haber")
claimed an exemption from sales tax for the electricity, gas, and packaging materials it purchased
for manufacturing. See Act of Aug. 9, 1978, 65th Leg., 2d C.S., ch. 2, § 1, 1978 Tex. Gen.
Laws 4, 4 (amended 1999) (current version at Tex. Tax Code Ann. § 151.317(a)(2), (c)(2)(A)(i)
(West Supp. 2000); Tex. Tax Code Ann.§ 151.318 (West Supp. 2000). (2) Haber claimed the
exemption for the period of January 1, 1990 through November 30, 1993 based on the claim that
it engages in "processing" fabric, which qualifies for the manufacturing exemption. (3) 

 The Comptroller audited Haber and denied the exemption based on the conclusion
that Haber is not a processor. Haber paid the taxes under protest and filed suit in Travis County
District Court seeking a refund. After a bench trial, the district court ordered that Haber recover
$65,818.29 and $13,819.45 in tax, penalty and interest, plus statutory interest, for electricity and
packaging materials, respectively. The Comptroller appeals. We will affirm.


Background


 The district court made the following findings of fact. Haber Fabrics operates a
116,000 square-foot facility in Irving, Texas. It purchases fabric that is designated "second
quality" due to inconsistent dyeing, stains, missing threads, or physical defects such as tears. 
Haber purchases the fabric in bulk and receives it from mills on unsorted rolls of forty-five and
sixty inches, with no indication as to why each roll is graded as second quality.

 The fabric is initially sorted and placed in a holding area, (4) then taken to an
inspection area, where it is mounted on "double-and-roll" machines. These machines allow
operators to visually inspect both sides of the fabric. The machines also fold the fabric for rolling
on boards of approximately thirty inches in length. When a defect is located, the operator stops
the machine, cuts out the defective portion, notes the length of fabric already rolled onto the
board, and sends the rolled fabric on for plastic wrapping and shipping.

 Fabric that has been cut out by the double-and-roll operators is sent to another
station where it is inspected and processed by hand. After defects are removed, these smaller
sections of fabric are also graded as "first quality" and wrapped for shipping. Haber's customers
are retailers, such as Wal-Mart and Jo Ann Fabrics. Haber warrants to these customers that they
will receive only first quality fabric for sale to their retail customers.

 In order to qualify for tax exemptions, Haber submitted a utility study. See 34 Tex.
Admin. Code § 3.295(e)(1) (1998). (5) An engineer certified that more than fifty percent of the
electricity used at the Haber facility was expended on processing. The district court concluded
that Haber engages in processing and that this constitutes its predominant use of electricity.


Issues Presented


 There are two issues presented in this appeal. The first is whether Haber is a
processor. If so, the tax paid on the gas and electricity used in processing the fabric is refundable
under section 151.318 of the Tax Code; the Comptroller does not challenge the assertion that
packaging is a component part of the fabric sold by Haber. The second issue is whether
processing constitutes Haber's predominant use of electricity, thus making all the electricity used
exempt from sales tax. See 34 Tex. Admin. Code § 3.295(d).


A. Haber Engages in Processing

 The Comptroller argues that Haber does not process fabric; rather, the Comptroller
contends that Haber remodels or sorts and grades fabric. On the other hand, Haber maintains,
and the trial court found, that Haber's method of transforming second quality fabric into first
quality fabric constitutes processing. We agree with Haber.

 The Tax Code exempts processing from sales tax but does not define the term;
however, the Comptroller is authorized to adopt rules that clarify and implement the legislation. 
See Tex. Tax Code Ann. § 151.021 (West 1992). The Comptroller's rules define processing as
"[t]he physical application of the materials and labor necessary to modify or to change the
characteristics of tangible personal property . . . . The property being processed may belong
either to the processor or the customer . . . . Processing does not include remodeling . . . ." 34
Tex. Admin. Code § 3.295(a)(7). "Remodeling" is "[t]o make tangible personal property
belonging to another over again without causing a loss of its identity, or without causing the
property to work in a new or different manner." Id. § 3.295(a)(6).

 First, Haber's activities satisfy the Comptroller's own rule defining processing. 
Haber applies materials and labor to modify or change the characteristics of the fabric it buys from
the mills. This change in the characteristics of the fabric likewise effects a change in the nature
and identity of the fabric. See Alamo Hardwoods v. Bullock, 614 S.W.2d 600, 604 (Tex. Civ.
App.--Texarkana 1981, writ ref'd n.r.e.) (stating that changes in nature and identity of article
constitute processing, although basic material remained same). The fabric Haber buys has
characteristics (soiled, stained, uneven, torn) that give it the nature or identity of second quality
fabric. After being sorted, aired out, inspected, cut, and packaged, the fabric has new
characteristics that give it the nature or identity of first quality fabric. This first quality grade
makes the fabric suitable for retail sale.

 Second, Haber changes the fabric's "form, context or condition . . . to make the
[property] marketable . . . ." Id. One of the indicia of processing is creating a product "of
tangible personal property for ultimate consumption." Id. at 605. Although the Comptroller
maintains that second quality fabric is marketable for retail sale, there is no evidence in this record
to support this assertion. There is no evidence in this record that retail customers buy second
quality fabric anywhere, at any price. The only market for the second quality fabric appears to
be, as stated in the Comptroller's brief, "Haber and businesses like Haber that process the fabric." 
(Emphasis added.) Thus, the only market for second quality fabric is as salvage goods that can
be converted, after processing, into retail quality goods.

 Third, processing creates a product with a "different purpose." Id. at 604. Haber
buys second quality fabric that is unsuitable for any practical use and transforms it into fabric that
consumers buy from Wal-Mart and Jo Ann Fabrics for numerous uses. While the Comptroller
maintains that the second quality fabric is fit for retail sale and could be made into apparel,
bedding or curtains, the Comptroller presented no evidence to demonstrate that mills sell second
quality fabric to retailers or that there is a consumer market for second quality fabric. 

 Fourth, while adding value is not the only test of whether processing takes place,
it is a factor to consider. Processing effects a change to "form, context or condition . . . to make
the [property] marketable." Id. Haber pays less for bolts of fabric that have numerous,
unspecified defects that render the fabric second quality. By transforming this defective fabric
into first quality fabric that is marketable, Haber adds value to the fabric.

 Finally, Haber is not remodeling fabric as the Comptroller contends. Remodeling
is excluded from the definition of processing and is thus a taxable commercial activity. See Tex.
Admin. Code § 3.295(a)(7). While it is true that processing can be performed on items owned
by the processor or another, by the definition contained in the Comptroller's rules, remodeling
is performed on items owned by another. (6) In cases where taxpayers were found to be remodeling,
rather than processing, the raw material was owned by the client who wanted the item customized
to suit his particular needs. See, e.g., Delta Pipe Fabricators, Inc. v. Bullock, 638 S.W.2d 652,
653 (Tex. App.--Austin 1982, writ ref'd n.r.e.) (pipe shop customized pipe owned by customer
for use on specific job sites); Calvert v. Julian Gold, Inc. 479 S.W.2d 328, 328-29 (Tex. Civ.
App.--Austin 1972, writ ref'd n.r.e.) (retailer altered dresses after sale). Haber cannot remodel
fabric that it owns. Furthermore, in Alamo Hardwoods, unlike custom millwork, which the court
found to be processing, remodeling was defined as merely "changing lumber from the standard
size produced for sale, to the specific size required by the customer--that is--sawing a board in
two." 614 S.W.2d at 604. Haber's inspection of every inch of both sides of cloth, and removal
of all defects, is more than cutting fabric into bolts of a certain size at a customer's demand.


B. Processing Constitutes Haber's Predominant Use of Electricity


 Although Haber is engaged in processing, this activity must constitute its
predominant use of electricity to warrant an exemption from sales tax. See 34 Tex. Admin. Code
§ 3.295(d)(1). Accord Colonial Cafeteria-Arlington, Inc. v. Bullock, 587 S.W.2d 211, 214 (Tex.
Civ. App.--Beaumont, 1979, no writ); Houston Natural Gas Corp. v. Southwestern Apparel, Inc.,
558 S.W.2d 950, 954 (Tex. Civ. App.--Austin, 1977, writ dism'd w.o.j.). If more than fifty
percent of the electricity passing through the utility meter is expended on processing, all Haber's
electricity is exempt. See 34 Tex. Admin. Code § 3.295(d)(1). If less than fifty percent is
expended on processing, all Haber's electricity is taxed. See id.

 A taxpayer demonstrates that its predominant use of electricity is exempt by
performing a utility study. See id. § 3.295(e)(1). "The study must list all uses of the utility, both
exempt and nonexempt, the times of usage, the energy used, and whether the use was taxable or
exempt." Id. The study must cover a period of twelve consecutive months and be certified by
an engineer. The business owner must certify that all items using the utility are listed and that
hours of use for each item are correct. See id. If the study is not completed and filed at the
business location, the claim for exemption is presumed invalid. See id. § 3.295(e)(2). The tax
will be assessed if the study is incomplete or invalid. See id. § 3.295(e)(3).

 Haber Fabrics is a processing facility. Although some administration and
marketing, which are not tax exempt activities, are conducted there, as a whole, the plant is
devoted to processing. The Comptroller argues that processing is an act that can easily be
separated into discrete, objectively quantifiable parts, and as such, most of Haber's activities do
not constitute processing. This is an attempt to divide processing into component parts and
examine each in a vacuum. This view was rejected by this Court in Texas Citrus Exchange v.
Sharp, wherein we held that holding frozen juice concentrate from different times of the growing
season for mixing into a blend that fulfilled stringent quality standards did not constitute
warehousing, but was rather "part of the manufacturing process." 955 S.W.2d 164, 170 (Tex.
App.--Austin 1997, no pet.). Processing is defined as "the action of continuously going along
through each of a succession of acts, events, or developmental stages." Webster's Third New
International Dictionary 1808 (Philip B. Gove ed., 1986). As long as the processing function is
a reasonable continuum from start to finish, the entire facility is devoted to processing. Haber
is engaged in a succession of acts that, in our view, reasonably constitute processing.

 The Comptroller argues that "the areas for which Haber claims an exemption far
exceed the area where Haber claims processing occurs." (Emphasis added.) The assumption is
that because the so-called processing area is less than fifty percent of total floor space, electricity
used for processing must be less than fifty percent of total electricity used. We decline to accept
this reasoning. Haber does not seek an exemption for a particular area of its facility, but for its
entire processing facility. Haber is entitled to the exemption if more than fifty percent of its
electricity is expended for processing. It is not necessarily true that a large area devoted, for
example, to administrative offices or retail, will use more electricity than a smaller area devoted
to processing. The pencil sharpeners and computers in an office may require far less energy than
a cloth roller used to process fabric; processing areas may require more air conditioning or
lighting or may require them for longer periods. The ratio of electricity required for processing
is not necessarily equal to the ratio of floor space required for processing. Haber's utility study
confirmed this fact, and we affirm the trial court's conclusion that Haber's processing activities
constitute its predominant use of electricity, thus making it tax exempt.


Conclusion


 We agree with the trial court's conclusion that Haber's activities in transforming
second quality fabric to first quality fabric qualify as processing under section 151.317 of the Tax
Code and rule 3.295 of the Texas Administrative Code. We further hold that this processing
constitutes Haber's predominant use of electricity, thereby entitling Haber to a refund. The
judgment of the district court is affirmed.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: March 2, 2000

Publish
1. The legislative purposes of these exemptions, as articulated by this Court are: 


(1) to encourage economic development in the state; (2) to avoid pyramiding of sales
tax on successive buyers and sellers, which would result in the ultimate consumer
paying sales tax on sales tax; and (3) to strike a balance between the policy of
avoiding multiple taxation and the need to raise revenue for the state


Texas Citrus Exch. v. Sharp, 955 S.W.2d 164, 168 (Tex. App.--Austin 1997, no pet.) (citing
Sharp v. Tyler Pipe Indus., Inc., 919 S.W.2d 157, 161 (Tex. App.--Austin 1996, writ
denied)).
2. Gas and electricity used for processing (a category of manufacturing) are exempt from sales
tax: 

(R) Gas and Electricity.


(1) There are exempted from the taxes imposed by this Chapter . . . use or other
consumption in this State of gas and electricity except when sold for commercial
use.


 . . . .


(3) For the purpose of this subsection,


 . . . .


 "Commercial use" means use by persons engaged in selling, warehousing or
distributing a commodity or service, either professional or personal.


 The term "commercial use" specifically does not include use by persons engaged
in: (1) processing tangible personal property for sale as tangible personal property;


 . . . .


Act of Aug. 9, 1978, 65th Leg., 2d C.S., ch. 2, § 1, 1978 Tex. Gen. Laws 4, 4 (amended
1999) (current version at Tex. Tax Code Ann. § 151.317(a)(2), (c)(2)(A)(i) (West Supp.
2000)).


Section 151.318 exempts materials used to package manufactured goods:


(a) The following items are exempted from the taxes imposed by this chapter if sold,
leased, or rented to, or stored, used, or consumed by a manufacturer: 


 (1) tangible personal property that will become an ingredient or component part
of tangible personal property manufactured, processed, or fabricated for
ultimate sale;


 . . . .


Tex. Tax Code Ann. § 151.318 (West Supp. 2000).
3. By definition, taxable "commercial use" of electricity excludes "processing." See Act of
Aug. 9, 1978, 65th Leg., 2d C.S., ch. 2, § 1(R)(3)(1), 1978 Tex. Gen. Laws 4, 4 (amended
1999) (current version at Tex. Tax Code Ann. § 151.317(c)(2)(A)(i) (West Supp. 2000)). The
Comptroller's rules implementing the statute define "manufacturing, which includes fabricating
and processing . . . as noncommercial use." 34 Tex. Admin. Code § 3.295(a)(4) (1998).
4. Some fabric is labeled as containing formaldehyde and requires a well-ventilated area. 
5. Rule 3.295(e)(1) provides: "Persons claiming a sales tax exemption because the
predominant use of natural gas and electricity through a single meter is for processing,
manufacturing, fabricating, or other noncommercial use must have performed a utility study to
establish this predominant exempt use." 
6. "Remodeling" is "[t]o make tangible personal property belonging to another over
again . . . ." Tex. Admin. Code § 3.295(a)(6) (emphasis added). 



G>
Conclusion


 We agree with the trial court's conclusion that Haber's activities in transforming
second quality fabric to first quality fabric qualify as processing under section 151.317 of the Tax
Code and rule 3.295 of the Texas Administrative Code. We further hold that this processing
constitutes Haber's predominant use of electricity, thereby entitling Haber to a refund. The
judgment of the district court is affirmed.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: March 2, 2000

Publish
1. The legislative purposes of these exemptions, as articulated by this Court are: 


(1) to encourage economic development in the state; (2) to avoid pyramiding of sales
tax on successive buyers and sellers, which would result in the ultimate consumer
paying sales tax on sales tax; and (3) to strike a balance between the policy of
avoiding multiple taxation and the need to raise revenue for the state


Texas Citrus Exch. v. Sharp, 955 S.W.2d 164, 168 (Tex. App.--Austin 1997, no pet.) (citing
Sharp v. Tyler Pipe Indus., Inc., 919 S.W.2d 157, 161 (Tex. App.--Austin 1996, writ
denied)).
2. Gas and electricity used for processing (a category of manufacturing) are exempt from sales
tax: 

(R) Gas and Electricity.


(1) There are exempted from the taxes imposed by this Chapter . . . use or other
consumption in this State of gas and electricity except when sold for commercial
use.


 . . . .


(3) For the purpose of this subsection,


 . . . .


 "Commercial use" means use by persons engaged in selling, warehousing or
distributing a commodity or service, either professional or personal.


 The term "commercial use" specifically does not include use by persons engaged
in: (1) processing tangible personal property for sale as tangible personal property;


 . . . .


Act of Aug. 9, 1978, 65th Leg., 2d C.S., ch. 2, § 1, 1978 Tex. Gen. Laws 4, 4 (amended
1999) (current version at Tex. Tax Code Ann. § 151.317(a)(2), (c)(2)(A)(i) (West Supp.
2000)).


Section 151.318 exempts materials used to package