**Carole Keeton RYLANDER, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Attorney General of the State of Texas, Appellants,**

v.

**HABER FABRICS CORP., Appellee.**

No. 03–99–00272–CV.

Court of Appeals of Texas, Austin.

March 2, 2000.

Jim B. Cloudt, Asst. Atty. Gen., Austin, for Appellant.

Robert M. Nicoud, Olson, Gibbons, Wilbur, Nicoud, Birne & Gueck, Dallas, for Appellee.

Before Justices JONES, KIDD and PATTERSON.

MACK KIDD, Justice.

This is a sales tax case. The legislature has exempted certain industries, including manufacturing, from paying some sales taxes.[1] Appellee Haber Fabrics Corporation ("Haber") claimed an exemption from sales tax for the electricity, gas, and packaging materials it purchased for manufacturing. *See* Act of Aug. 9, 1978, 65th Leg., 2d C.S., ch. 2, § 1, 1978 Tex. Gen. Laws 4, 4 (amended 1999) (current version at Tex. Tax Code Ann. § 151.317(a)(2), (c)(2)(A)(i) (West Supp.2000); Tex. Tax Code Ann. § 151.318 (West Supp.2000).[2]

1. The legislative purposes of these exemptions, as articulated by this Court are:

   (1) to encourage economic development in the state; (2) to avoid pyramiding of sales tax on successive buyers and sellers, which would result in the ultimate consumer paying sales tax on sales tax; and (3) to strike a balance between the policy of avoiding multiple taxation and the need to raise revenue for the state

   *Texas Citrus Exch. v. Sharp,* 955 S.W.2d 164, 168 (Tex.App.—Austin 1997, no pet.) (citing *Sharp v. Tyler Pipe Indus., Inc.,* 919 S.W.2d 157, 161 (Tex.App.—Austin 1996, writ denied)).

2. Gas and electricity used for processing (a category of manufacturing) are exempt from sales tax:

   (R) Gas and Electricity.
   (1) There are exempted from the taxes imposed by this Chapter ... use or other consumption in this State of gas and electricity except when sold for commercial use.
   ....
   (3) For the purpose of this subsection,

Haber claimed the exemption for the period of January 1, 1990 through November 30, 1993 based on the claim that it engages in "processing" fabric, which qualifies for the manufacturing exemption.[3]

The Comptroller audited Haber and denied the exemption based on the conclusion that Haber is not a processor. Haber paid the taxes under protest and filed suit in Travis County District Court seeking a refund. After a bench trial, the district court ordered that Haber recover $65,818.29 and $13,819.45 in tax, penalty and interest, plus statutory interest, for electricity and packaging materials, respectively. The Comptroller appeals. We will affirm.

## Background

The district court made the following findings of fact. Haber Fabrics operates a 116,000 square-foot facility in Irving, Texas. It purchases fabric that is designated "second quality" due to inconsistent dyeing, stains, missing threads, or physical defects such as tears. Haber purchases the fabric in bulk and receives it from mills on unsorted rolls of forty-five and sixty inches, with no indication as to why each roll is graded as second quality.

The fabric is initially sorted and placed in a holding area,[4] then taken to an inspection area, where it is mounted on "double-and-roll" machines. These machines allow operators to visually inspect both sides of the fabric. The machines also fold the fabric for rolling on boards of approximately thirty inches in length. When a defect is located, the operator stops the machine, cuts out the defective portion, notes the length of fabric already rolled onto the board, and sends the rolled fabric on for plastic wrapping and shipping.

Fabric that has been cut out by the double-and-roll operators is sent to another station where it is inspected and processed by hand. After defects are removed, these smaller sections of fabric are also graded as "first quality" and wrapped for shipping. Haber's customers are retailers, such as Wal–Mart and Jo Ann Fabrics. Haber warrants to these customers that they will receive only first quality fabric for sale to their retail customers.

In order to qualify for tax exemptions, Haber submitted a utility study. *See* 34 Tex. Admin. Code § 3.295(e)(1) (1998).[5]

----

....
"Commercial use" means use by persons engaged in selling, warehousing or distributing a commodity or service, either professional or personal.

The term "commercial use" specifically does not include use by persons engaged in:
(1) processing tangible personal property for sale as tangible personal property;
....
Act of Aug. 9, 1978, 65th Leg., 2d C.S., ch. 2, § 1, 1978 Tex. Gen. Laws 4, 4 (amended 1999) (current version at Tex. Tax Code Ann. § 151.317(a)(2), (c)(2)(A)(i) (West Supp. 2000)).

Section 151.318 exempts materials used to package manufactured goods:
(a) The following items are exempted from the taxes imposed by this chapter if sold, leased, or rented to, or stored, used, or consumed by a manufacturer:
(1) tangible personal property that will become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale;

....
Tex. Tax Code Ann. § 151.318 (West Supp. 2000).

**3.** By definition, taxable "commercial use" of electricity excludes "processing." *See* Act of Aug. 9, 1978, 65th Leg., 2d C.S., ch. 2, § 1(R)(3)(1), 1978 Tex. Gen. Laws 4, 4 (amended 1999) (current version at Tex. Tax Code Ann. § 151.317(c)(2)(A)(i) (West Supp. 2000)). The Comptroller's rules implementing the statute define "manufacturing, which includes fabricating and processing ... as noncommercial use." 34 Tex. Admin. Code § 3.295(a)(4) (1998).

**4.** Some fabric is labeled as containing formaldehyde and requires a well-ventilated area.

**5.** Rule 3.295(e)(1) provides: "Persons claiming a sales tax exemption because the predominant use of natural gas and electricity through a single meter is for processing, manufacturing, fabricating, or other noncommercial use must have performed a utility study to establish this predominant exempt use."

An engineer certified that more than fifty percent of the electricity used at the Haber facility was expended on processing. The district court concluded that Haber engages in processing and that this constitutes its predominant use of electricity.

### Issues Presented

There are two issues presented in this appeal. The first is whether Haber is a processor. If so, the tax paid on the gas and electricity used in processing the fabric is refundable under section 151.318 of the Tax Code; the Comptroller does not challenge the assertion that packaging is a component part of the fabric sold by Haber. The second issue is whether processing constitutes Haber's *predominant* use of electricity, thus making all the electricity used exempt from sales tax. *See* 34 Tex. Admin. Code § 3.295(d).

### A. Haber Engages in Processing

The Comptroller argues that Haber does not process fabric; rather, the Comptroller contends that Haber remodels or sorts and grades fabric. On the other hand, Haber maintains, and the trial court found, that Haber's method of transforming second quality fabric into first quality fabric constitutes processing. We agree with Haber.

The Tax Code exempts processing from sales tax but does not define the term; however, the Comptroller is authorized to adopt rules that clarify and implement the legislation. *See* Tex. Tax Code Ann. § 151.021 (West 1992). The Comptroller's rules define processing as "[t]he physical application of the materials and labor necessary to modify or to change the characteristics of tangible personal property.... The property being processed may belong either to the processor or the customer.... Processing does not include remodeling...." 34 Tex. Admin. Code § 3.295(a)(7). "Remodeling" is "[t]o make tangible personal property belonging to another over again without causing· a loss of its identity, or without causing the prop-

erty to work in a new or different manner." *Id.* § 3.295(a)(6).

First, Haber's activities satisfy the Comptroller's own rule defining processing. Haber applies materials and labor to *modify* or *change* the characteristics of the fabric it buys from the mills. This change in the characteristics of the fabric likewise effects a change in the nature and identity of the fabric. *See Alamo Hardwoods v. Bullock,* 614 S.W.2d 600, 604 (Tex.Civ. App.—Texarkana 1981, writ ref'd n.r.e.) (stating that changes in nature and identity of article constitute processing, although basic material remained same). The fabric Haber buys has characteristics (soiled, stained, uneven, torn) that give it the nature or identity of second quality fabric. After being sorted, aired out, inspected, cut, and packaged, the fabric has new characteristics that give it the nature or identity of first quality fabric. This first quality grade makes the fabric suitable for retail sale.

Second, Haber changes the fabric's "form, context or condition ... to make the [property] marketable...." *Id.* One of the indicia of processing is creating a product "of tangible personal property for ultimate consumption." *Id.* at 605. Although the Comptroller maintains that second quality fabric is marketable for retail sale, there is no evidence in this record to support this assertion. There is no evidence in this record that retail customers buy second quality fabric anywhere, at any price. The only market for the second quality fabric appears to be, as stated in the Comptroller's brief, "Haber and businesses like Haber that *process* the fabric." (Emphasis added.) Thus, the only market for second quality fabric is as salvage goods that can be converted, after processing, into retail quality goods.

Third, processing creates a product with a "different purpose." *Id.* at 604. Haber buys second quality fabric that is unsuitable for any practical use and transforms it into fabric that consumers buy from Wal-

Mart and Jo Ann Fabrics for numerous uses. While the Comptroller maintains that the second quality fabric is fit for retail sale and could be made into apparel, bedding or curtains, the Comptroller presented no evidence to demonstrate that mills sell second quality fabric to retailers or that there is a consumer market for second quality fabric.

■ Fourth, while adding value is not the only test of whether processing takes place, it is a factor to consider. Processing effects a change to "form, context or condition . . . to make the [property] marketable." *Id.* Haber pays less for bolts of fabric that have numerous, unspecified defects that render the fabric second quality. By transforming this defective fabric into first quality fabric that is marketable, Haber adds value to the fabric.

■ Finally, Haber is not remodeling fabric as the Comptroller contends. Remodeling is excluded from the definition of processing and is thus a taxable commercial activity. *See* Tex. Admin. Code § 3.295(a)(7). While it is true that processing can be performed on items owned by the processor or another, by the definition contained in the Comptroller's rules, remodeling is performed on items *owned by another.*[6] In cases where taxpayers were found to be remodeling, rather than processing, the raw material was *owned by the client* who wanted the item customized to suit his particular needs. *See, e.g., Delta Pipe Fabricators, Inc. v. Bullock,* 638 S.W.2d 652, 653 (Tex.App.—Austin 1982, writ ref'd n.r.e.) (pipe shop customized pipe owned by customer for use on specific job sites); *Calvert v. Julian Gold, Inc.* 479 S.W.2d 328, 328–29 (Tex.Civ. App.—Austin 1972, writ ref'd n.r.e.) (retailer altered dresses after sale). Haber cannot remodel fabric that it owns. Furthermore, in *Alamo Hardwoods,* unlike custom millwork, which the court found to be processing, remodeling was defined as merely "changing lumber from the standard size

produced for sale, to the specific size required by the customer—that is—sawing a board in two." 614 S.W.2d at 604. Haber's inspection of every inch of both sides of cloth, and removal of all defects, is more than cutting fabric into bolts of a certain size at a customer's demand.

## B. Processing Constitutes Haber's Predominant Use of Electricity

■ Although Haber is engaged in processing, this activity must constitute its predominant use of electricity to warrant an exemption from sales tax. *See* 34 Tex. Admin. Code § 3.295(d)(1). *Accord Colonial Cafeteria–Arlington, Inc. v. Bullock,* 587 S.W.2d 211, 214 (Tex.Civ.App.—Beaumont, 1979, no writ); *Houston Natural Gas Corp. v. Southwestern Apparel, Inc.,* 558 S.W.2d 950, 954 (Tex.Civ.App.—Austin, 1977, writ dism'd w.o.j.). If more than fifty percent of the electricity passing through the utility meter is expended on processing, all Haber's electricity is exempt. *See* 34 Tex. Admin. Code § 3.295(d)(1). If less than fifty percent is expended on processing, all Haber's electricity is taxed. *See id.*

A taxpayer demonstrates that its predominant use of electricity is exempt by performing a utility study. *See id.* § 3.295(e)(1). "The study must list all uses of the utility, both exempt and nonexempt, the times of usage, the energy used, and whether the use was taxable or exempt." *Id.* The study must cover a period of twelve consecutive months and be certified by an engineer. The business owner must certify that all items using the utility are listed and that hours of use for each item are correct. *See id.* If the study is not completed and filed at the business location, the claim for exemption is presumed invalid. *See id.* § 3.295(e)(2). The tax will be assessed if the study is incomplete or invalid. *See id.* § 3.295(e)(3).

---

6. "Remodeling" is "[t]o make tangible personal property *belonging to another* over

again. . . ." Tex. Admin. Code § 3.295(a)(6) (emphasis added).

Haber Fabrics is a processing facility. Although some administration and marketing, which are not tax exempt activities, are conducted there, as a whole, the plant is devoted to processing. The Comptroller argues that processing is an act that can easily be separated into discrete, objectively quantifiable parts, and as such, *most* of Haber's activities do not constitute processing. This is an attempt to divide processing into component parts and examine each in a vacuum. This view was rejected by this Court in *Texas Citrus Exchange v. Sharp*, wherein we held that holding frozen juice concentrate from different times of the growing season for mixing into a blend that fulfilled stringent quality standards did not constitute warehousing, but was rather "part of the manufacturing process." 955 S.W.2d 164, 170 (Tex.App.—Austin 1997, no pet.). Processing is defined as "the action of continuously going along through each of a succession of acts, events, or developmental stages." *Webster's Third New International Dictionary* 1808 (Philip B. Gove ed., 1986). As long as the processing function is a reasonable continuum from start to finish, the entire facility is devoted to processing. Haber is engaged in a succession of acts that, in our view, reasonably constitute processing.

The Comptroller argues that "the *areas* for which Haber claims an exemption far exceed the *area* where Haber claims processing occurs." (Emphasis added.) The assumption is that because the so-called processing area is less than fifty percent of total floor space, electricity used for processing must be less than fifty percent of total electricity used. We decline to accept this reasoning. Haber does not seek an exemption for a particular *area* of its facility, but for its entire processing facility. Haber is entitled to the exemption if more than fifty percent of its electricity is expended for processing. It is not necessarily true that a large area devoted, for example, to administrative offices or retail, will use more electricity than a smaller area devoted to processing. The pencil sharpeners and computers in an office may require far less energy than a cloth roller used to process fabric; processing areas may require more air conditioning or lighting or may require them for longer periods. The ratio of electricity required for processing is not necessarily equal to the ratio of floor space required for processing. Haber's utility study confirmed this fact, and we affirm the trial court's conclusion that Haber's processing activities constitute its predominant use of electricity, thus making it tax exempt.

### Conclusion

We agree with the trial court's conclusion that Haber's activities in transforming second quality fabric to first quality fabric qualify as processing under section 151.317 of the Tax Code and rule 3.295 of the Texas Administrative Code. We further hold that this processing constitutes Haber's predominant use of electricity, thereby entitling Haber to a refund. The judgment of the district court is affirmed.