# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00447-CV

**Cafeteria Operators, L.P., Appellant**

**v.**

**Carole Keeton Rylander, Comptroller of Public Accounts; and John Cornyn, Attorney General of the State of Texas, Appellees**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. 99-14363, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING**

Cafeteria Operators runs a chain of cafeterias and buffet-style restaurants known as Furr=s Cafeterias and Furr=s Family Dining restaurants (AFurr=s@). As a method of controlling costs and maintaining product uniformity, Furr=s operates a central kitchen to service all of its restaurants. At the central kitchen, bulk food items are turned into the individual portions served at the restaurants. For example, large blocks of compressed frozen fish are sliced into fillets which are then buttered and breaded. Corn bread muffins are prepared in mass quantities. The food is then shipped to the individual restaurants, where it is heated and served.

To prepare this food, Furr=s uses electricity and gas. The Comptroller, after auditing the period from April 1, 1991, to October 31, 1994, assessed sales tax on the electricity and gas used in Furr=s central kitchen. Furr=s protested the assessment. A hearing was held before an administrative law judge who upheld the Comptroller=s assessment. After a trial *de novo*, the district court denied Furr=s motion for summary judgment and rendered judgment in the Comptroller=s favor on its cross-motion for summary

judgment.  In one issue on appeal, Furr=s contends that the electricity and gas used in the central kitchen during the audit period qualified for exemption from sales tax.  We will affirm the trial court judgment.

## Discussion

The sales tax statute at issue in this case exempts electricity and gas sales from taxation except when they are sold for a commercial use.  Act of May 31, 1981, 67th Leg., R.S., ch. 389, ' 1, sec. 151.317(a), 1981 Tex. Gen. Laws 1490, 1563-64.  ACommercial use@ is use by a person Aengaged in selling, warehousing, or distributing a commodity or a professional or personal service . . . .@ *Id*. sec. 151.317 (c)(2).  Commercial use does not include Aprocessing tangible personal property for sale as tangible personal property,@ but does include the Apreparation or storage of food for immediate consumption.@  Tex. Tax Code Ann. ' 151.317(c)(2)(A)(i) (West 2002).  AFood for immediate consumption@ is defined by rule as Athe type of food, beverages, or meals normally prepared, served or sold by restaurants, lunch counters, cafeterias, etc., which, when sold, require no additional preparation prior to consumption.@  34 Tex. Admin. Code ' 3.293(a)(9)(A) (2001).[1]

---

[1]    During the period covered by the audit, section 151.317(a) read: AGas and electricity are exempted . . . except when sold for a commercial use.@  Act of May 31, 1981, 67th Leg., R.S., ch. 389, ' 1, sec. 151.317(a), 1981 Tex. Gen. Laws 1490, 1563.  In 1999, that section was restructured to read that gas

and electricity are exempt when used for a list of certain exempt purposes. Act of May 31, 1999, 76th Leg., R.S., ch. 1467, ' 2.18, sec. 151.317(a), 1999 Tex. Gen. Laws 5017, 5017.  The definitions of Acommercial use@ and Aprocessing@ did not change in 1999; however, the 1999 amendments have two different sections numbered (c)(2).  In 1987, the Tax Code was changed to define the use of gas and electricity in the preparation of food for immediate consumption as taxable processing.  Act of July 21, 1987, 70th Leg., 2d C.S., art. 1, pt. 4, ' 25, 1987 Tex. Gen. Laws 1, 18-19.

Despite the convoluted language of the statute which states an exclusion from an exemption, followed by an exception to that exclusion, the result can be stated simply: Processing food for immediate consumption is a taxable commercial use of electricity and gas. *Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 169-70 (Tex. App.CAustin 1997, no pet.), provides the proper analysis for determining whether Furr=s is engaged in the taxable processing of food for immediate consumption.[2]

*Texas Citrus* involved a cooperative marketing association that produced fruit juice. In its manufacturing process, it extracted juice from the fresh fruit and then extracted the remaining water to obtain a thick syrupy substance known as industrial concentrate. It next froze the concentrate, which was then sent to an off-site tank farm. The concentrate was maintained in its frozen state for up to six months in order to collect concentrate from various harvests with different acidity levels to be blended to achieve the proper quality. *Id*. at 166. The Comptroller attempted to assess tax on the electricity used to maintain the concentrate in its frozen state on the basis that electricity used for Awarehousing@ the frozen juice was not tax exempt. Texas Citrus contended that the maintenance of concentrate in its frozen state was an integral part of its manufacturing process, as blending various batches of juice was necessary to achieve a uniform product. *Id*. at 167.

In *Texas Citrus*, this Court held that the manufacturing process includes every operation from the beginning of production until the product is completed and packaged for sale.

---

[2] We do not apply the Comptroller=s Asingle entity@ analysis, that is, the Comptroller gives significance to the fact that the restaurants, cafeterias, and central kitchen are owned by the same legal entity.

*Id*. at 170. The opinion rejected the Comptroller=s theory that the manufacturing process could be separated into discrete components, some taxable and some tax-exempt. The opinion also rejected the Comptroller=s argument that the off-site location of the tank farm changed the nature of the activity from manufacturing to warehousing. The vast majority[3] of the frozen concentrate in the tanks was held for use in processing Texas Citrus=s main product, the juice. *Id*. at 170. The vast majority of the electricity used to maintain the frozen concentrate was therefore being used for an essential part of the manufacturing process, an exempt noncommercial use. *Id*. at 170-71.

This Court applied a similar analysis in *Rylander v. Haber Fabrics Corp*., 13 S.W.3d 845, 850 (Tex. App.CAustin 2000, no pet.), in which we said that the Comptroller cannot divide processing into component parts to examine each in a vacuum. One must look to see whether a function is a Areasonable continuum from start to finish@ in deciding the taxable nature of the function. *Id*. In that case, we concluded that the activities performed by the taxpayer, a series of manipulations to transform fabric of varying qualities into uniform rolls of first quality fabric, were all part of a tax-exempt manufacturing process. *Id*.

In bringing this appeal, Furr=s overlooks the analysis advanced in *Texas Citrus* and in *Haber Fabrics*. Furr=s attempts to analyze separately the Acomponent@ activities performed in its central kitchen from the activities performed at its restaurants and cafeterias; it also relies on the kitchen=s off-site

---

[3]     A small amount of the frozen industrial concentrate was sold as concentrate.

location to emphasize the different nature of the activity performed there. Under Furr=s analysis, the central kitchen is not preparing food for immediate consumption; rather it is a

facility engaged in the non-taxable activity of Aprocessing tangible personal property for sale as tangible personal property.@ Only in each individual restaurant or cafeteria is the food prepared and made ready for immediate consumption, it argues.

For the same reason that we rejected the Comptroller=s analysis in *Texas Citrus* and *Haber*, we reject Furr=s analysis here. We hold that Furr=s engages in the taxable processing activity of preparing food for immediate consumption in its central kitchen as well as in its restaurants.[4] All of the steps it takes in the central facility are part of the continuum of events required to prepare food to be served in its restaurants. That the initial preparation is done at a central location does not change the nature of the process just as the retention of the frozen concentrate in off-site tanks in *Texas Citrus* did not remove it from the manufacturing process. If Furr=s had only one cafeteria and performed all the food preparation in a kitchen at that location, the electricity used would be taxable because electricity used to prepare food for immediate consumption is a commercial use. It is immaterial whether Furr=s transports a fish fillet from a walk-in freezer on the premises to its deep-fat fryer ten feet away or transports that piece of frozen fish for several hundred miles. Location does not alter the activity of preparing food for immediate consumption. In *Texas Citrus*, this analysis of whether the taxpayer=s activities were a Areasonable continuum from start to finish@ resulted in the conclusion that the electricity used at the tank farms was part of the non-taxable

---

[4]    As with the Texas Citrus Exchange=s sale of a *de minimus* amount of the frozen concentrate, Furr=s sells a small amount of the items leaving the central processing facility.

processing of tangible personal property. In the current case, it results in the conclusion that the electricity and gas used in the central kitchen is part of the taxable process of preparing food for immediate consumption.[5]

## Conclusion

We hold that the that the electricity and gas used in Furr=s central kitchen are being used for the taxable purpose of preparing food for immediate consumption. We overrule Furr=s single issue and affirm the trial court judgment.

Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: July 26, 2002

Do Not Publish

---

[5] Furr=s contends that the Comptroller=s reliance on its Asingle entity@ theory to assess tax in these circumstances violates the Comptroller=s own Asingle meter@ rule. We have not relied on the single entity theory and our holding does not implicate the Asingle meter@ rule. The text of the rule shows why it does not apply to this situation: ANatural gas or electricity used during a regular monthly billing period *for both exempt and taxable purposes* under a single meter is totally exempt or taxable based upon the predominant use of the natural gas or electricity measured by that meter.@ *See* Tex. Admin. Code ' 3.295(e)(1) (2001) (emphasis added). Furr=s never established that a single meter at any location measured both an exempt and a taxable purpose.