TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00447-CV






Cafeteria Operators, L.P., Appellant



v.



Carole Keeton Rylander, Comptroller of Public Accounts; and John Cornyn, Attorney
General of the State of Texas, Appellees





FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 99-14363, HONORABLE CHARLES F. CAMPBELL, JR., JUDGE PRESIDING 






 Cafeteria Operators runs a chain of cafeterias and buffet-style restaurants known as
Furr's Cafeterias and Furr's Family Dining restaurants ("Furr's"). As a method of controlling costs
and maintaining product uniformity, Furr's operates a central kitchen to service all of its restaurants. 
At the central kitchen, bulk food items are turned into the individual portions served at the
restaurants. For example, large blocks of compressed frozen fish are sliced into fillets which are then
buttered and breaded. Corn bread muffins are prepared in mass quantities. The food is then shipped
to the individual restaurants, where it is heated and served.

 To prepare this food, Furr's uses electricity and gas. The Comptroller, after auditing
the period from April 1, 1991, to October 31, 1994, assessed sales tax on the electricity and gas used
in Furr's central kitchen. Furr's protested the assessment. A hearing was held before an
administrative law judge who upheld the Comptroller's assessment. After a trial de novo, the district
court denied Furr's motion for summary judgment and rendered judgment in the Comptroller's favor
on its cross-motion for summary judgment. In one issue on appeal, Furr's contends that the
electricity and gas used in the central kitchen during the audit period qualified for exemption from
sales tax. We will affirm the trial court judgment.


Discussion



 The sales tax statute at issue in this case exempts electricity and gas sales from
taxation except when they are sold for a commercial use. Act of May 31, 1981, 67th Leg., R.S., ch.
389, § 1, sec. 151.317(a), 1981 Tex. Gen. Laws 1490, 1563-64. "Commercial use" is use by a
person "engaged in selling, warehousing, or distributing a commodity or a professional or personal
service . . . ." Id. sec. 151.317 (c)(2). Commercial use does not include "processing tangible
personal property for sale as tangible personal property," but does include the "preparation or storage
of food for immediate consumption." Tex. Tax Code Ann. § 151.317(c)(2)(A)(i) (West 2002). 
"Food for immediate consumption" is defined by rule as "the type of food, beverages, or meals
normally prepared, served or sold by restaurants, lunch counters, cafeterias, etc., which, when sold,
require no additional preparation prior to consumption." 34 Tex. Admin. Code § 3.293(a)(9)(A)
(2001). (1)

 Despite the convoluted language of the statute which states an exclusion from an
exemption, followed by an exception to that exclusion, the result can be stated simply: Processing
food for immediate consumption is a taxable commercial use of electricity and gas. Texas Citrus
Exch. v. Sharp, 955 S.W.2d 164, 169-70 (Tex. App.--Austin 1997, no pet.), provides the proper
analysis for determining whether Furr's is engaged in the taxable processing of food for immediate
consumption. (2)

 Texas Citrus involved a cooperative marketing association that produced fruit juice. 
In its manufacturing process, it extracted juice from the fresh fruit and then extracted the remaining
water to obtain a thick syrupy substance known as industrial concentrate. It next froze the
concentrate, which was then sent to an off-site tank farm. The concentrate was maintained in its
frozen state for up to six months in order to collect concentrate from various harvests with different
acidity levels to be blended to achieve the proper quality. Id. at 166. The Comptroller attempted to
assess tax on the electricity used to maintain the concentrate in its frozen state on the basis that
electricity used for "warehousing" the frozen juice was not tax exempt. Texas Citrus contended that
the maintenance of concentrate in its frozen state was an integral part of its manufacturing process,
as blending various batches of juice was necessary to achieve a uniform product. Id. at 167.

 In Texas Citrus, this Court held that the manufacturing process includes every
operation from the beginning of production until the product is completed and packaged for sale. 

Id. at 170. The opinion rejected the Comptroller's theory that the manufacturing process could be
separated into discrete components, some taxable and some tax-exempt. The opinion also rejected
the Comptroller's argument that the off-site location of the tank farm changed the nature of the
activity from manufacturing to warehousing. The vast majority (3) of the frozen concentrate in the
tanks was held for use in processing Texas Citrus's main product, the juice. Id. at 170. The vast
majority of the electricity used to maintain the frozen concentrate was therefore being used for an
essential part of the manufacturing process, an exempt noncommercial use. Id. at 170-71.

 This Court applied a similar analysis in Rylander v. Haber Fabrics Corp., 13 S.W.3d
845, 850 (Tex. App.--Austin 2000, no pet.), in which we said that the Comptroller cannot divide 
processing into component parts to examine each in a vacuum. One must look to see whether a
function is a "reasonable continuum from start to finish" in deciding the taxable nature of the
function. Id. In that case, we concluded that the activities performed by the taxpayer, a series of
manipulations to transform fabric of varying qualities into uniform rolls of first quality fabric, were
all part of a tax-exempt manufacturing process. Id.

 In bringing this appeal, Furr's overlooks the analysis advanced in Texas Citrus and
in Haber Fabrics. Furr's attempts to analyze separately the "component" activities performed in its
central kitchen from the activities performed at its restaurants and cafeterias; it also relies on the
kitchen's off-site location to emphasize the different nature of the activity performed there. Under
Furr's analysis, the central kitchen is not preparing food for immediate consumption; rather it is a 


facility engaged in the non-taxable activity of "processing tangible personal property for sale as
tangible personal property." Only in each individual restaurant or cafeteria is the food prepared and
made ready for immediate consumption, it argues.

 For the same reason that we rejected the Comptroller's analysis in Texas Citrus and
Haber, we reject Furr's analysis here. We hold that Furr's engages in the taxable processing activity
of preparing food for immediate consumption in its central kitchen as well as in its restaurants. (4) All
of the steps it takes in the central facility are part of the continuum of events required to prepare food
to be served in its restaurants. That the initial preparation is done at a central location does not
change the nature of the process just as the retention of the frozen concentrate in off-site tanks in
Texas Citrus did not remove it from the manufacturing process. If Furr's had only one cafeteria and
performed all the food preparation in a kitchen at that location, the electricity used would be taxable
because electricity used to prepare food for immediate consumption is a commercial use. It is
immaterial whether Furr's transports a fish fillet from a walk-in freezer on the premises to its deep-fat fryer ten feet away or transports that piece of frozen fish for several hundred miles. Location does
not alter the activity of preparing food for immediate consumption. In Texas Citrus, this analysis
of whether the taxpayer's activities were a "reasonable continuum from start to finish" resulted in
the conclusion that the electricity used at the tank farms was part of the non-taxable processing of
tangible personal property. In the current case, it results in the conclusion that the electricity and gas
used in the central kitchen is part of the taxable process of preparing food for immediate
consumption. (5)


Conclusion



 We hold that the that the electricity and gas used in Furr's central kitchen are being
used for the taxable purpose of preparing food for immediate consumption. We overrule Furr's
single issue and affirm the trial court judgment.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: July 26, 2002

Do Not Publish
1. During the period covered by the audit, section 151.317(a) read: "Gas and electricity are
exempted . . . except when sold for a commercial use." Act of May 31, 1981, 67th Leg., R.S., ch.
389, § 1, sec. 151.317(a), 1981 Tex. Gen. Laws 1490, 1563. In 1999, that section was restructured
to read that gas and electricity are exempt when used for a list of certain exempt purposes. Act of
May 31, 1999, 76th Leg., R.S., ch. 1467, § 2.18, sec. 151.317(a), 1999 Tex. Gen. Laws 5017, 5017. 
The definitions of "commercial use" and "processing" did not change in 1999; however, the 1999
amendments have two different sections numbered (c)(2). In 1987, the Tax Code was changed to
define the use of gas and electricity in the preparation of food for immediate consumption as taxable
processing. Act of July 21, 1987, 70th Leg., 2d C.S., art. 1, pt. 4, § 25, 1987 Tex. Gen. Laws 1, 18-19.
2. We do not apply the Comptroller's "single entity" analysis, that is, the Comptroller gives
significance to the fact that the restaurants, cafeterias, and central kitchen are owned by the same
legal entity.
3. A small amount of the frozen industrial concentrate was sold as concentrate.
4. As with the Texas Citrus Exchange's sale of a de minimus amount of the frozen concentrate,
Furr's sells a small amount of the items leaving the central processing facility.
5. Furr's contends that the Comptroller's reliance on its "single entity" theory to assess tax in
these circumstances violates the Comptroller's own "single meter" rule. We have not relied on the
single entity theory and our holding does not implicate the "single meter" rule. The text of the rule
shows why it does not apply to this situation: "Natural gas or electricity used during a regular
monthly billing period for both exempt and taxable purposes under a single meter is totally exempt
or taxable based upon the predominant use of the natural gas or electricity measured by that meter." 
See Tex. Admin. Code § 3.295(e)(1) (2001) (emphasis added). Furr's never established that a single
meter at any location measured both an exempt and a taxable purpose.