# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-07-00006-CV

---

**Houston Wire & Cable Company, Appellant**

**v.**

**Susan Combs, Comptroller of Public Accounts of the State of Texas, and Greg Abbott, Attorney General of the State of Texas, Appellees**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. D-1-GN-05-000581, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Houston Wire and Cable Company ("HWC") appeals the Comptroller's[1] denial of a sales tax refund claim for its purchase of cable reels, arguing that its purchase of reels was non-taxable. In two issues, HWC challenges the legal and factual sufficiency of the evidence, contending that the purchases are not taxable because the reels qualify for the sale-for-resale exemption, *see* Tex. Tax Code Ann. § 151.302(a) (West 2002), and because HWC qualifies for the manufacturing

---

[1] Because the interests of the Comptroller of Public Accounts and the Attorney General converge, we refer to the appellees collectively as the "Comptroller."

exemption, *see id.* § 151.318(a)(1) (West Supp. 2006).[2] We reject HWC's contentions and affirm the judgment of the district court.

### FACTUAL AND PROCEDURAL BACKGROUND

The background facts are undisputed. HWC is a supplier of electrical wire and cable. HWC buys cable in bulk from suppliers and maintains the cable in its inventory. HWC cuts, spools, and delivers cable according to the specific needs of its customers, who are primarily electrical wholesalers and distributors. When HWC purchases cable from its suppliers, the cable is delivered on reels. When HWC receives orders from its customers, it cuts and respools the cable onto new reels. The reels used by HWC to respool the cable are the subject of this lawsuit. They are purchased by HWC to allow it to customize the cable assemblies for its customers. A customer's order could specify, for instance, the type, arbor size, color, coding, labeling, lagging, attachments, or fumigations requirements for the reels. In the process of respooling, HWC attaches the reels to the specific cable ordered by the customer.

The parties agree that purchases of the cable itself qualify for the sale-for-resale sales tax exemption. HWC contends that its purchases of the reels, likewise, qualify for the sale-for-resale exemption and, therefore, paid the sales tax under protest for the period in question, August 1, 1997, through December 31, 2001. The amount of the refund at issue is $160,596.03, which includes the tax paid on the reels plus statutory pro rata interest for the refund period.

---

[2] The legislature amended section 151.318 several times during the refund period; however, the changes had no impact on the issues in this case. For convenience, we cite to the current version of the statute.

HWC contends that it is entitled to a refund because purchases of the reels, like purchases of the cable, qualify for the sale-for-resale exemption. Alternatively, even if the reels are excluded from the sale-for-resale exemption, HWC argues that it is entitled to a refund because it qualifies for the manufacturing exemption. On both points, HWC challenges the legal and factual sufficiency of the district court's findings.

After the Comptroller denied its refund claim, HWC filed suit in district court. Following a trial *de novo*, *see* Tex. Tax Code Ann. §§ 112.054, .154 (West 2001), the district court granted judgment in favor of the Comptroller on all issues. This appeal followed.

## ANALYSIS

### Standard of Review

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). The test for legal sufficiency is whether the evidence would enable reasonable and fair-minded people to reach the judgment being reviewed. *Id.* at 827-28. There is legally insufficient evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla

3

of evidence exists to support a finding if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.*

In reviewing the factual sufficiency of the evidence, we consider and weigh all of the evidence in the record, and we may overturn a judgment only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985).

***Sale-for-Resale Exemption***

HWC argues that the evidence is both legally and factually insufficient to support the district court's finding that HWC's purchases of reels are excluded from the sale-for-resale exemption.

The sale-for-resale exemption applies to the sale of:

(1)     tangible personal property or a taxable service to a purchaser who acquires the property or service for the purpose of reselling it in the United States of America or a possession or territory of the United States of America or in the United Mexican States in the normal course of business in the form or condition in which it is acquired or as an attachment to or integral part of other tangible personal property or taxable service.

Tex. Tax Code Ann. § 151.006(1) (West 2002).

Excluded from this exemption is property that is merely packaging or wrapping. *Id.* § 151.302(c), (d). The packaging exclusion applies to "[i]nternal or external wrapping, packing, and packaging supplies used by a person in wrapping, packing, or packaging tangible personal property or in the performance of a service for the purpose of furthering the sale of the tangible

4

personal property or the service." *Id.* § 151.302(c). "[W]rapping," "packing," and "packaging supplies" include:

> (1) wrapping paper, wrapping twine, bags, cartons, crates, crating material, tape, rope, rubber bands, labels, staples, glue, and mailing tubes; and
>
> (2) excelsior, straw, cardboard fillers, separators, shredded paper, ice, dry ice, cotton batting, shirt boards, hay laths, and property used inside a package to shape, form, stabilize, preserve, or protect the contents.

*Id.* § 151.302(d).

The district court found that "the reels separate wire and cable products and help prevent tangling of wire," "prevent wire and cable from being damaged during storage, shipment, and installation," "shape, form, stabilize, protect, and preserve the electrical wire and cable products," "may be either internal or external packaging,"[3] and "are used by HWC for the purpose of furthering the sale of HWC's electrical wire and cable products" because "[c]ustomers expect a reel with most deliveries," which "are attractive features, since the reels keep the product from tangling and make handling the product easier."

HWC does not dispute that the reels at issue share many of the characteristics of the items the legislature includes in its list of packaging materials. However, HWC's central contention is that the reels possess additional characteristics distinguishing them, as a matter of law, from the "packaging" the legislature has described in section 151.302. *See State v. Fid. & Deposit Co. of Md.*,

---

[3] The court added that "The flanges [on the reels] may be external, and the barrel is internal. If the entire reel is put into a box or shrink-wrapped on a pallet, then the entire reel becomes internal packaging."

5

223 S.W.3d 309, 312 (Tex. 2007) (discussing statutory construction principle of *ejusdem generis*: "when words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation.") (quoting *Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003)). HWC emphasizes that because section 151.302 is an exclusion from a tax exemption, the Comptroller has the burden of proving the exclusion's application. *See Texas Citrus Exch. v. Sharp*, 955 S.W.2d 164, 168 (Tex. App.—Austin 1997, no pet.). "In other words," HWC asserts, "the issue is not whether there was a similarity between the reels and the items listed in the wrapping and packaging exclusion that would make the reels taxable, but whether there was a distinction between the reels and the items listed that would make the reels nontaxable."

The "packaging" the legislature has identified in section 151.302, HWC asserts, is limited to items that merely contain, protect, or keep organized other products. Although the reels serve these purposes for the wire or cable spooled around them, HWC urges, they also serve an additional, essential purpose in the installation of that cable. HWC points to undisputed evidence that the reels are necessary to install the types and lengths of wire or cable it sells on reels;[4] that it customizes not only the wire or cable to customer specifications, but also the reels (according to type, arbor size, color, coding, labeling, lagging, attachments, or fumigation requirements); and that if the reel is damaged, customers consider the whole product useless and return it. HWC further asserts that "[a]ll of the items enumerated in the statute are of the type that are detached before

---

[4] As HWC acknowledges, there is evidence that some smaller lengths or sizes of cable are not sold on reels and that a reel is not necessary to install such cable.

installation, and in many instances must be detached before installation," while "the reels are used for installation."

HWC urges that these features and uses distinguish the reels from mere packaging for wire or cable and characterize a single, integrated product—wire or cable *assemblies*. HWC points to testimony that its customers and the specialty wire industry in general regard the wire or cable assemblies to be a single, integrated product. HWC also emphasizes the testimony of Kevin Koller, a Comptroller's Office staffer who formerly served as the supervisor of the Comptroller's sales and motor vehicle tax section. During HWC's cross-examination, Koller acknowledged that certain items that might possess some characteristics of packaging could serve additional functions related to installation or application of a product that could render the item as an integral part of the product itself. Koller opined that, for example, the Comptroller's Office would consider the casings on bullets, the base container or tube on lipstick, and the lighter component of a cigarette lighter to be components of single, integrated products rather than product packaging. HWC analogizes its reels to these products. In its view, each of these items is required for the "installation" of the product: the casing is necessary to fire the bullet; the lipstick tube is used to apply or "install" the lipstick; the lighter is used to inject or "install" lighter fluid to create the flame; and the reel, similarly, is used to install cable or wire.

HWC's arguments ultimately fail. Contrary to HWC's suggestions, the "packaging" identified by the legislature in section 151.302 does not imply a rigid exclusion of any item that can be said to be used in "installing" the product it contains. What would clearly appear to be "packaging" for many products includes components that in some respect facilitate their installation

7

or use—the wide variety of nozzles, spouts, squeeze tops, and applicators on consumer food product containers are but one commonplace example. Whether customers might specify some of these features would not alone alter this conclusion.

Further, although the district court heard HWC's evidence that its customers and those in the industry regarded its wire or cable assemblies as a single, integrated product, there was also evidence that HWC's product was the wire or cable itself rather than its means of installation. The evidence demonstrates, as the district court found, that "[t]he wire and cable products must be separated from the packaging, including the reel, before the wire and cable can be energized or before the electrical circuit for which the wire and cable was purchased can be completed." This fact suggests that the reels are more akin to disposable packaging than an integral part of the product itself. It likewise undermines HWC's analogies to products whose means of installation or application are integral to the products themselves. As the Comptroller observes, a lipstick tube remains attached to the lipstick as it is applied to the lips—the intended use for the product—until the supply of lipstick is completely exhausted. The same is true of a cigarette lighter and lighter fluid. By contrast, HWC's wire and cable is entirely unusable unless and until it is separated from its reel. The bullet casing analogy, as HWC urges, is somewhat closer: by the time a bullet flies out of a gun and hits a target, its casing has been discarded. Nonetheless, the bullet casing—like lipstick tubes and cigarette lighters, and unlike HWC's reels—is actually employed in the ultimate use of the product it contains—the firing of the bullet from the gun.

In light of these considerations, HWC's reels are not distinguishable from the packaging materials the legislature has identified in section 151.302 of the tax code. We accordingly

find that the evidence was legally and factually sufficient to enable the district court to conclude that "[t]he reels at issue in this case are packaging materials," "[t]he reels are not an attachment to, ingredient of, integral part of, or component part of electrical wire and cable products sold by HWC," and "[t]he purchases of the reels at issue did not qualify for the sale for resale exemption in Texas Tax Code § 151.302(a)." We overrule HWC's first issue.

*Manufacturing Exemption*

In the alternative, HWC argues that, even if the reels are packaging, HWC is a manufacturer, and the reels are eligible for the manufacturing exemption. HWC challenges the legal and factual sufficiency of the evidence supporting the district court's determination that HWC is not a manufacturer.

According to the tax code, a product sold to a manufacturer is exempt from sales tax if the product is "tangible personal property that will become an ingredient or component part of tangible personal property manufactured, processed, or fabricated for ultimate sale." Tex. Tax Code Ann. § 151.318(a)(1). To qualify for the manufacturing exemption, the reels must be "ingredients or component parts" of the cable assemblies, and HWC's respooling process must fall under the definition of manufacturing, processing, or fabrication.

Packaging products purchased by a manufacturer are eligible for the manufacturing exemption. Section 151.318(d) defines manufacturing as "each operation beginning with the first stage in the production of tangible personal property and ending with the completion of tangible personal property having the physical properties (including packaging, if any) that it has when transferred by the manufacturer to another." *Id.* § 151.318(d). The Comptroller's rules confirm

9

this interpretation, including "wrapping, packing, and packaging supplies" in the list of items exempted from taxes under Chapter 151 when purchased by a manufacturer. *See* 34 Tex. Admin. Code § 3.300(d)(15) (2007).[5] Even if the reels are most appropriately classified as packaging, as we have already determined, they are eligible for the manufacturing exemption if HWC is a manufacturer. The parties do not dispute the reels' classification as "ingredients or component parts" of the cable assemblies, and we conclude that the reels qualify as "ingredients or component parts" under the exemption.

We next turn to the question of whether HWC's operations amount to manufacturing, processing, or fabrication. HWC argues that it is a manufacturer under the tax code because both processing and fabrication are required to respool the cable. The Comptroller contends that the evidence shows that HWC is a "repacker," that none of HWC's operations amount to either processing or fabrication, and that HWC is not a manufacturer and cannot claim the manufacturing exemption.

### 1.      Processing

Comptroller Rule 3.300(a) addresses processing and fabrication: "Processing and fabrication are two activities that are performed during manufacturing. For example, the person who takes raw steel and makes pipe is engaged in fabrication. The workers who coat or thread the pipe are engaged in processing." *Id.* § 3.300(a)(9)(B). More specifically, processing is described in the rule as:

---

[5] The Comptroller amended Rule 3.300 in 2001; however, the changes had no effect on the provisions relevant to this case. For convenience, we cite to the current version of the rule.

10

The physical application of the materials and labor necessary to modify or to change the characteristics of tangible personal property. The repair of tangible personal property, belonging to another, by restoring it to its original condition is not considered processing of that property. The mere packing, unpacking, or shelving of a product to be sold will not be considered to be processing of that property. Processing does not include remodeling.

*Id.* § 3.300(a)(10).

The evidence is sufficient to support the court's finding that none of HWC's operations involve changing the intrinsic characteristics of the cable.[6] The cable arrives at HWC's warehouse on bulk reels in sellable form. HWC cuts and repackages the cable from the bulk reels according to customer specifications. Although the length of the cable affects its resistance, the change in resistance is inherent in the nature of the cable as determined by the laws of physics.[7] Further, the appropriate resistance and corresponding length needed is calculated by the customer, not HWC. HWC simply receives an order for a specified length of cable. According to the testimony, HWC adds value by cutting and spooling the cable, offering same-day delivery, providing full cable-management services, and acting as a one-stop shop for its customers. HWC creates no new product and does nothing to the intrinsic characteristics of the existing product to add value; rather, HWC adds value through its packaging and distribution services. We conclude that none of HWC's activities amount to processing.

---

[6] Some of these intrinsic characteristics are resistance, capacitance, inductance, and attenuation.

[7] To determine resistance, the product of the rho or resistivity and the length is divided by the cross-sectional area ($R=pL/A$ where R=resistance, p=rho or resistivity, L=length, and A=Area).

HWC argues that cutting cable is comparable to threading pipe, which amounts to processing under the Comptroller's rules. *See id.* § 3.300(a)(9)(B). Cutting pipe and threading pipe are two separate and distinguishable operations.[8] Threading pipe involves changing the characteristics of the pipe itself to allow installation. During the threading process, grooves are cut into the end of the pipe so that the pipe can be attached to another pipe. HWC's operations are distinguishable. Beyond cutting the cable to specified lengths, HWC does nothing to the cable similar to threading a pipe that would change the characteristics of the cable itself.

HWC presented some evidence that it processed the reels by painting, drilling holes, modifying the size of the arbor hole, fumigating, and adding attachments. However, having found that HWC's product is the cable, not the cable assemblies, and that the reels are packaging for the cable, none of the changes made to the reels amount to processing of the product. Since the reels are packaging, changing or customizing the reels is part of the packaging process.

HWC relies on *Rylander v. Haber Fabrics Corp.* to support the argument that its operations amount to processing. 13 S.W.3d 845 (Tex. App.—Austin 2000, no pet.). Haber Fabrics purchased second quality fabric. *Id.* at 847. After sorting and inspecting, defective portions of the fabric were removed and processed by hand. *Id.* The remaining portions were packaged as first quality fabric and wrapped for shipping to retailers such as Wal-Mart and Jo Ann Fabrics. *Id.* The district court concluded that Haber Fabrics's activities amounted to processing, and this Court

---

[8] The Comptroller's rule specifically includes both coating and threading of pipe as processing. Pipe is commonly cut at the same time that it is threaded or coated. Cutting pipe, a separate and distinguishable operation, is noticeably absent from the Comptroller's list of activities that are considered processing.

agreed, finding that, after being sorted, inspected, cut, and packaged, the fabric had new characteristics and a new identity as first quality fabric.

Instead of transforming second quality cable into first quality cable, HWC receives first quality cable in bulk and repackages the same cable into smaller portions for its customers. It does not transform the cable. In the process of respooling the cable, HWC does nothing to change the cable's intrinsic characteristics; it merely cuts the cable into shorter lengths.

HWC presented evidence that it inspects the cable for defects; however, HWC employees testified that testing for defects is not standard practice and is only done at the customer's request or if HWC has reason to believe that testing is necessary. Even if HWC tests a cable, finds a defect, and cuts out the defective portion, finding and curing defects is not the primary purpose of its business. As indicated by the testimony that HWC inspects cable only in certain situations, the cable it receives is assumed to be without defect. Unlike Haber Fabrics, HWC does not routinely receive a defective or unmarketable product, examine and modify that product, and repackage that product as first quality. HWC cannot be said to be engaging in processing.

### 2. Fabrication

HWC also argues that the evidence establishes that its operations amount to fabrication, which, like processing, is included in the manufacturing exemption. Under the Comptroller's rule, fabrication is "[t]o make, build, create, produce, or assemble components of tangible personal property, or to make tangible personal property work in a new or different manner." *Id.* § 3.300(a)(5). HWC argues that it "make[s] tangible personal property work in a new or different manner" by attaching reels, which facilitate the cable's installation. HWC also argues that it is engaged in fabrication because it "assemble[s] components of tangible personal property." As we

13

have previously discussed, adding the reels to the cable amounts to repackaging and does nothing to make the cable itself work in a new or different manner. Further, the reels are most appropriately classified as packaging and not integral or component parts of the cable.

Viewing the evidence of HWC's operations in the light most favorable to the verdict, we conclude that there was legally sufficient evidence to support the district court's finding that HWC is not a manufacturer and, therefore, cannot qualify for the manufacturing exemption. *See City of Keller*, 168 S.W.3d at 829-30. Likewise, we conclude that there was factually sufficient evidence to support this finding because the decision of the district court was not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. *See Cain*, 709 S.W.2d at 176. We overrule HWC's second issue.

## CONCLUSION

Having reviewed the evidence presented at trial, we conclude there was legally and factually sufficient evidence to support the district court's findings of fact and conclusions of law. We affirm the district court's judgment.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed:   December 12, 2007

14